U.S. Court of Appeals Docket No. 14-17318

_____

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

_____

DIONNE CHOYCE,

*Plaintiff-Appellant*,

vs.

SF BAY AREA INDEPENDENT MEDIA CENTER, *et al.*,

*Defendant-Appellee.*

_____

On Appeal from a Decision of the United States District Court
for the Northern District of California
Case No. 3:13-cv-01842-JST
The Honorable Jon S. Tigar

_____

## SUPPLEMENTAL EXCERPTS OF RECORD OF
## APPELLEE SF BAY AREA INDEPENDENT MEDIA CENTER

_____

Roger Myers, Esq.
Leila Knox, Esq.
**BRYAN CAVE LLP**
560 Mission Street, 25th Floor
San Francisco, CA 94105-2994
Tel: 415-268-2000
leila.knox@bryancave.com

*Attorneys for Defendant-Appellee*
SF BAY AREA INDEPENDENT MEDIA CENTER

261711.1

# INDEX TO APPELLEE'S SUPPLEMENTAL EXCERPTS OF RECORD

| Page | Document | N.D. Cal. Docket No. | Date |
|------|----------|----------------------|------|
| SER 001 | Transcript of Proceedings re: Motion for Attorney's Fees | 84 | Sept. 4, 2014 |
| SER 036 | Reply In Support of Defendant SF Bay Area Independent Media Center's Motion for Award of Attorneys' Fees Pursuant to 17 U.S.C. § 505 | 68 | Aug. 8, 2014 |
| SER 047 | Supplemental Declaration of Leila Knox In Support of Motion for Award of Attorney Fees Pursuant to 17 U.S.C. § 505 | 68-1 | Aug. 8, 2014 |
| SER 050 | Declaration of Roger Myers In Support of Motion for Award of Attorney Fees Pursuant to 17 U.S.C. § 505 | 59-2 | July 2, 2014 |
| SER 053 | Transcript of Proceedings re: Motion to Dismiss | 80 | March 27, 2014 |
| SER 070 | Plaintiff's Opposition to Defendant SF Bay Area Independent Media Center Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and to Specially Strike Plaintiff's State Law Causes of Action Pursuant to California Code of Civil Procedure 425.16 and Memorandum of Points and Authorities In Support of Same | 40 | Jan. 23, 2014 |

| Page | Document | N.D. Cal. Docket No. | Date |
|---|---|---|---|
| SER 086 | Exhibit "A" – [Proposed] Second Amended Complaint for Damages and Injunctive Relief | 37-1 | Jan. 21, 2014 |
| SER 108 | Motion for Extension of Time to Answer or Otherwise Respond to Complaint | 23 | Dec. 2, 2013 |
| SER 111 | Declaration of Leila Knox In Support Of Motion for Extension of Time to Answer or Otherwise Respond to Complaint | 23-1 | Dec. 2, 2013 |

Pages 1 - 34

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jon S. Tigar, Judge

DIONNE CHOYCE,                )
                              )
          Plaintiff,          )
                              )
   VS.                        )     NO. C 13-01842 JST
                              )
SF BAY AREA INDEPENDENT MEDIA )
CENTER, et al.,               )
                              )
          Defendants.         )
_____)

                         San Francisco, California
                         Thursday, September 4, 2014

                **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
                         SMITH PATTEN
                         221 Main Street, 7th Floor
                         San Francisco, CA 94105
                 BY:  **SPENCER FREEMAN SMITH**
                      **DOW W. PATTEN**
                      **ATTORNEYS AT LAW**

For Defendant SF Bay Area Indepedent Media Center:

                         BRYAN, CAVE, LLP
                         560 Mission Street, 25th Floor
                         San Francisco, CA 94105-2994
                 BY:  **LEILA CHRISTINE KNOX**
                      **JESSICA ELIZABETH MAR**
                      **ATTORNEYS AT LAW**

Reported By:       Rhonda L. Aquilina, CSR #9956, RMR, CRR
                   Official Court Reporter

**APPEARANCES:   (CONTINUED)**

For Defendant Layer42.net:

```
                    CASAS, RILEY & SIMONIAN, LLP
                    55 North 3rd Street
                    Campbell, CA 95008
          BY:  DANIEL L. CASAS
               ATTORNEY AT LAW
```

| | |
|---|---|
| 1 | **Thursday - September 4, 2014**                    **2:33 p.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | **---oOo---** |
| 4 | **THE CLERK:**  Calling civil case 13-1842, Dionne Choyce |
| 5 | versus SF Bay Area Independent Media Center, et al. |
| 6 | Counsel, will you please step forward and make your |
| 7 | appearances. |
| 8 | **MS. KNOX:**  Leila Knox for SF Bay Area Independent |
| 9 | Media Center. |
| 10 | **MS. MAR:**  Jessica Mar, SF Bay Area Independent Media |
| 11 | Center. |
| 12 | **MR. CASAS:**  Good afternoon, your Honor.  Dan Casas for |
| 13 | Layer42.net. |
| 14 | **MR. SMITH:**  Good afternoon, your Honor.  Spencer Smith |
| 15 | on behalf of plaintiff. |
| 16 | **MR. PATTEN:**  Good afternoon, your Honor.  Dow Patten |
| 17 | on behalf of plaintiff Dionne Choyce. |
| 18 | **THE COURT:**  The matter is on calendar for two motions |
| 19 | for attorneys' fees with regard to the copyright claims in the |
| 20 | case if the court dismissed with prejudice.  And the matter has |
| 21 | been fully briefed on both sides, and I welcome your arguments |
| 22 | in just a few moments. |
| 23 | Let me just say a few things.  These are just tentative |
| 24 | inclinations on the Court's part, and hopefully they'll give |
| 25 | you some guidance.  I do think that Indybay and Layer42, who |

```
 1    are prevailing parties in this case -- I don't think there's

 2    any serious debate about that -- a dismissal with prejudice

 3    disables a party from being able to bring the claim again in

 4    any forum, and that means they prevail.  I also am familiar

 5    with the language in the Fogerty case and elsewhere, that the

 6    Court should consider whether, in determining whether to

 7    exercise its discretion under the Copyright Act, whether a

 8    party prevailed on the merits or on a technical defense,

 9    whatever that means.  It's not really discussed.  I don't

10    think, regardless of what the definition of "technical" is,

11    that this was technical.  Mr. Choyce brought a copyright claim.

12    He doesn't own a copyright, so on the merits, I think this case

13    was decided on the merits.

14         I'm happy to take argument on both of those points.

15         Assuming, for the sake of argument, that some fees are

16    awarded, I would be interested in knowing whether Level 42

17    wants to say anything further about allocation of time to the

18    copyright claim.  I said Level 42, I meant Layer42.  Layer42 in

19    its reply brief sort of says, look, we dealt with that in the

20    declaration.  I've taken a look at the declaration, and some of

21    the time entries there, I can give you some examples if you

22    like, it's not clear to me that they -- that the Court can

23    readily conclude, and it's the burden of the party moving for

24    attorneys' fees, that the time entries go to the copyright

25    claim.
```

5

 1          With regard to Indybay's request for fees, I have no

 2     quarrel with the notion that Indybay is entitled to its fees

 3     even though the matter was litigated by Brian Cave on a pro

 4     bono basis.  But there is, I think, a reasonable question in

 5     the Court's mind, is it necessary -- was it necessary for

 6     lawyers of that billing rate, and whatever economics 101

 7     inferences you want to draw about caliber from billing rate, to

 8     litigate this claim?  Is that what the Court needs to do?  And

 9     is that fair?  Is that reasonable?  I ask these questions in

10     part because there's about $76,000 on the table, which strikes

11     me as a lot of money.

12          Now, if it's the right number, then that's the number that

13     gets awarded.  But I want the parties on both sides, frankly --

14     so this question goes also for plaintiff's counsel -- I want

15     you to leave the courtroom knowing that you've given the Court

16     the choice that you think the Court is most likely to make.  It

17     doesn't mean that you are backing off of your initial position.

18          And attorneys' fees motions are hard.  They're hard.

19     They're particularly hard for the people against whom they're

20     made, I understand that.  But many judges, including me, think

21     like baseball arbitrators.  In baseball arbitration, when the

22     management -- when the ownership and the player get into a

23     dispute about salary, they go to arbitration, and the

24     arbitrators are required to pick one of the parties' positions.

25     So hypothetically, if the player says I'm worth $5 million a

1    year, and the owner says that player is only worth $2 million a

2    year, and the arbitrators know the market value of that player

3    is $4 million a year -- they know that because they're

4    specialist arbitrators -- they cannot award the player $4

5    million.  They cannot, so they choose 5.  Why do they?  Because

6    it's fairer than 2, if the real number is 4.

7          And the reason I say all that is I can choose.  I'll do

8    that.  But after the speech, the other side might give me

9    something to shoot at that I like better than whatever you're

10   doing, that's all.  So whether it's in the context of the

11   questions I posed to defendants about their billings or

12   something else, if you want to give me your back-up position

13   today, you're welcome to do that.

14         And you're welcome to address, in addition to those

15   questions, anything else that you'd like to talk about in the

16   context of these motions.  I'll hear first from the moving

17   parties, and I'll start with Indybay.

18         **MS. KNOX:**  Well, thank you, your Honor.  I appreciate

19   your comments, and I'll just get straight to your concern about

20   the hourly rates that we're charging.  They're very reasonable.

21   They're within the rates charged by similarly situated

22   attorneys in San Francisco.  If you look at the FOIA case that

23   we cited, the Court there awarded fees that were actually --

24   two years ago that were higher than the fees that we're

25   charging here.  And also when you multiply those fees by the

7

1    number of hours that we spent on this matter, and you look at
2    the number of hours that we spent, it was 66 hours on the
3    motion to dismiss.  And in the cases most similar to this is
4    the *Duckhole* case, there it was 151 hours on the motion to
5    dismiss, and also that was very early in the proceedings; it
6    was a threshold matter.  We spent about a third of that amount.
7         So I don't think that our fees are extravagant or, you
8    know, very extremely high.  So if you have any specific
9    questions about, you know, what we spent our time on, I'd be
10   happy to answer those questions.
11            **THE COURT:**  I don't.  Thank you.
12            **MS. KNOX:**  Okay.
13            **THE COURT:**  Mr. Casas.
14            **MR. CASAS:**  Thank you, your Honor.
15        Completely independent, these two applications that are
16   before you -- and I was glad to see that they were fairly
17   consistent in terms of the amount -- I believe Indybay
18   requested 59,000 and some change, and our firm requested 57.  I
19   went back -- you referenced earlier the *Fogerty* case, and I
20   couldn't help but follow-up on what happened with that case.
21   It was sent back down to the district court, and fees were
22   awarded of $1.4 million for the defense of that copyright
23   claim.  Now, albeit that was decided on a motion to dismiss,
24   but I found it --
25            **THE COURT:**  That's not the only distinction between

 1  the two cases.

 2       **MR. CASAS:**  True.  True.  It was mainly curiosity, but

 3  I was interested to see what eventually happened with the

 4  number that was upheld on appeal, as the Court, I'm sure, is

 5  aware.

 6       So, as you mentioned, fee motions are difficult.  One of

 7  the difficulties is trying to parse out or allocate fees to

 8  specific causes of action, because normally you know as a

 9  lawyer you don't usually do that in your billing as you're

10  litigating a case.  So we try to be fair, reasonable about our

11  own decision on how that was allocated.  We certainly didn't

12  ask for all fees that had been incurred in the case, which I

13  think was about 106,000.

14       But I do want to note that Indybay's application was

15  addressed to the point at which they got involved in the case

16  which followed the filing of the First Amended Complaint.  As

17  you know, we were involved in the case from the beginning

18  answering or responding to the original complaint.  And I will

19  give it to your Honor that I'm sure there is wiggle room, if

20  you will, in terms of responding to the original complaint,

21  especially as we filed both a motion to dismiss and an

22  Anti-SLAPP motion.

23       So I'm not going to say much more than that.  I think it's

24  in your Honor's hands, and I'm happy to answer any further

25  questions.  But I do think, in light of all the circumstances,

9

```
1   the fact that there wasn't ownership of this copyright claim,
2   that the fees expended to defend, in light of the amendments to
3   the complaint, are reasonable.
4           THE COURT:  Thank you.
5           MR. CASAS:  Thank you.
6           THE COURT:  Who would like to speak on behalf of
7   plaintiff's counsel?
8           MR. SMITH:  Your Honor, first, I want to address the
9   issue of the purpose behind attorneys' fees in the Copyright
10  Act.  And, your Honor, we cited several cases for you in our
11  opposition that the purpose of the attorneys' fees provision is
12  to further the purposes of the Act.  The Act's primary
13  objective is to encourage production of original, literary,
14  artistic and musical expression for the good of the public.
15  That's not at issue here, Your Honor.  We don't have that in
16  this case, and that's undisputed by the parties.
17          THE COURT:  What would you do if you had prevailed on
18  your copyright claim and the other side said this doesn't have
19  anything to do with the production of art.  You say, okay,
20  sorry, you're right, I'm not entitled to my fees.
21          MR. SMITH:  No, your Honor.  What we would have said
22  is -- your Honor we were very limited.  The procedural posture
23  of this case limited what the plaintiff could receive or obtain
24  from the Court, and that was injunctive relief.  And what we
25  have is a complaint being filed and the defendant taking the
```

1  picture down and saying there's no more need to litigate.  The

2  picture is down now.

3       Now, if the defendants didn't do that, we would have still

4  moved forward with the claim.  This issue of ownership and

5  the --

6       THE COURT:  I'm not sure that you've addressed my

7  question.  If you had prevailed in this case, would you have

8  been entitled to attorneys' fees?

9       MR. SMITH:  If we would have prevailed in this case,

10 that would have been up to the Court's discretion, and going to

11 the *Fogerty* claims that I'm going to go through --

12      THE COURT:  You're suggesting right now that I

13 exercise my discretion not to award attorneys' fees.

14      MR. SMITH:  Correct.

15      THE COURT:  Because the underlying subject matter of

16 the case is not within the ambit of the core purposes of the

17 Copyright Act, so I'm not -- my question only asks you --

18 you're responding to my question by saying, gosh, I know that

19 would be up to the Court, but that's not your argument on this

20 motion.  It's not gosh, it's up to the Court.  I'm just asking

21 you is it different, if you had won the case, would your

22 argument be any different?

23      MR. SMITH:  No.

24      THE COURT:  Okay.  Go ahead.

25      MR. SMITH:  Okay.  And your Honor, I preface that with

1    that's assuming we have an issue with this case being decided

2    on the merits.  Your Honor, your prefatory statements were you

3    found that you believe defendants were prevailing parties, and

4    this issue was decided on the merits.  And I'd like to address

5    that, because the cases that both parties cite have made

6    distinctions, and courts throughout have given a lot of

7    out-of-circuit decisions, courts have made a distinction

8    between cases being decided at the pleading stage and cases

9    being decided on the merits, and that's after summary judgment

10   or at trial.

11        And your Honor, I want to focus your attention there to --

12   specifically to your Honor has never made a ruling that in fact

13   Mr. Choyce did not have an ownership of a copyright or did not

14   meet the registration requirements.  Your Honor's order was

15   very specific that the plaintiff has failed to plead those

16   facts.

17        **THE COURT:**  What is your best case?  I promise you I'm

18   going to read it the moment I get off the bench.

19        **MR. SMITH:**  Yes, Your Honor.

20        **THE COURT:**  What is your best case for the following

21   proposition, if there is one, that a defendant who prevails on

22   a motion to dismiss, which is granted without leave to amend,

23   is not a prevailing party?

24        **MR. SMITH:**  Your Honor, I cite several cases, if I

25   may.

1          THE COURT:  You may not.  I asked for one.  What's

2     your best case?

3          MR. SMITH:  I would -- I think it would be a tie, but

4     I'll give you *Christopher & Banks*, 805 Fed. Supp. 2d, 698.  The

5     Copyright Act is not meant to punish pleading errors, your

6     Honor, and that's the premise of that case, and I implore your

7     Honor to read that case.

8          THE COURT:  Oh, I will read it.  I'm a man of my word.

9      Was the complaint in that case dismissed without leave to

10    amend?

11         MR. SMITH:  I believe so, your Honor.

12         THE COURT:  All right.  Thank you.

13         MR. SMITH:  Your Honor, I also like to turn your

14    attention to *Pallazo Vintage Homes -v- Urban Housing*

15    *Development*.  It's a Ninth Circuit case, 2011.  I'm sorry.

16    It's a district court in Oregon.  It's in the Ninth Circuit,

17    2011 U.S. District Lexis 43114.

18      The defendants, in their moving papers, cite *Budget*

19    *Cinema*, it's a Seventh Circuit case, and said there, the

20    copyright ownership interest in the theater design, the Court

21    dismissed the complaint there when the plaintiff failed to

22    follow its registration when it filed its complaint.  And the

23    *Pallazzo* court here, the district court, distinguished that

24    case when denying fees, and said the case before the district

25    court was distinguishable before -- excuse me, was

1   distinguishable from *Budget Cinema*, in that the claims there in

2   *Budget Cinema* were decided on the merits.  And in the case

3   before the district court there, it said the issues of

4   ownership and registration were not litigated to resolution,

5   and therefore the Court denied the request for fees.  And those

6   are the two cases I'd like your Honor to focus on that are

7   different from here.

8        And if we look at your Honor's order on the copyright

9   claim, your Honor says, again, I'm not reaching the merits to

10  whether or not, number one, Mr. Choyce started a law firm and

11  began to employ photographers.  While it didn't seem plausible,

12  your Honor said look, I'm not going to keep this going on for

13  more time for you to reamend your complaint and do so.

14       And so it would be our first -- our position, your

15  Honor -- and we thank your Honor for deciding this rather

16  quickly.  We have a situation where --

17            THE COURT:  What are the names of the parties in that

18  United States District West Lexis case?

19            MR. SMITH:  I'm sorry.

20            THE COURT:  I can't get on Lexis right here, but I

21  have Westlaw open.  What are the parties?

22            MR. SMITH:  *Palazzo, P-A-L-A-Z-Z-O*, Vintage Homes, LLC

23  versus Urban Housing Development, LLC.

24            THE COURT:  Thank you.

25            MR. SMITH:  And so your Honor, the main thrust of this

1    case was whether or not Indybay and Layer42 could collectively

2    go out and make statements about Mr. Choyce's alleged

3    fraudulent activities.  And the major thrust of this, in

4    looking back at our oral argument, your Honor, was we spoke

5    about the Anti-SLAPP statute, and I had to remind your Honor,

6    hey, we have this copyright issue, and you say, okay, you can

7    go ahead and amend it.  The issue you were concerned about our

8    first time around, when it was just one of the defendants, was

9    whether or not it was mooted by the issue of we were limited to

10   injunctive relief, and the offending picture was taken down.

11   And your Honor, we cited some authority in our opposition which

12   states that a defendant taking down the offending work and

13   making the injunctive relief moot does not render a party a

14   prevailing party.

15       Now, your Honor, you didn't go through the *Fogerty* factors

16   with any of the defendants in their arguments, but I think it's

17   important that we go through them, that we revisit them.  It's

18   not -- fees are not mandatory here, they're discretionary.  And

19   I think, your Honor, as you may recall, our pre-litigation

20   discussion with the defendants were very difficult.  Plaintiff

21   gave both defendants an extension of time to file their --

22       **THE COURT:**  I just want to say I didn't mention them

23   because I don't -- they're not something that I am inviting

24   discussion, but I'm familiar with the factors.  I read all of

25   the *Fogerty* cases, and there are more than one, because of the

```
 1  procedural history of that case.  And I get -- and so
 2  plaintiffs understand that I get their argument, I do not
 3  exclude the possibility that the things that were said about
 4  Mr. Choyce on that web site are defamatory.  That is an issue
 5  that has to be decided in the state court.  But his concern,
 6  Mr. Choyce's concern about the speech that was being
 7  disseminated is not without basis, and so his attempting to do
 8  something about that, including hiring lawyers and having
 9  lawyers reach out to the parties that he felt were responsible,
10  I don't take issue with any of that.  The question is did he
11  have a righteous -- did he have a legitimate copyright claim?
12  If you're doing something that's harming me, everyone would
13  expect that I take legal action if I can to make you stop.  But
14  if what you're doing is kicking my dog and I threaten you with
15  a medical malpractice claim, those two things are not connected
16  to each other.
17       So I don't dispute that -- everything I say is tentative,
18  including this, but as I sit here now, I don't think that
19  Mr. Choyce acted in bad faith.  It's not that I think he
20  prosecuted these claims for no reason, it's just I wonder what
21  the legal basis was to bring this claim.  And so if you want to
22  turn the Court around, you don't have to worry about his good
23  faith.  You have to tell me why somebody who had never
24  registered for a copyright, who as far as I can tell had no
25  legitimate basis under the copyright law to assert a claim of
```

1   copyright, why I shouldn't find that it's objectively

2   unreasonable.

3       Now, if I make that finding, absolutely, fees are still

4   discretionary, and we could talk about basis for exercising the

5   Court's discretion.

6       **MR. SMITH:**  Your Honor, I think the procedural posture

7   of the case precludes the Court from making that finding,

8   because there was no decision on the merits made by your Honor.

9   This issue of whether or not Mr. Choyce met the requirements of

10  registration was not before the Court.  It was not decided, and

11  it could not be decided at the 12(b)(6) stage.  And so where we

12  were at, your Honor, was if there was a finding by the Court on

13  the merits of Mr. Choyce's compliance with the registration

14  requirements, I think your Honor would have the ability to do

15  so.  We're just not at that point in this case.

16      Your Honor, again, another case that I'd like to cite for

17  you is *Recreation*, and it's another Lexis cite, so I'm going to

18  have to give you the full site.

19      **THE COURT:**  While you're looking that up, let me tell

20  you what *Pallazzo* said.

21      **MR. SMITH:**  Sure.

22      **THE COURT:**  *Pallazzo* was a reported recommendation by

23  a magistrate judge that was issued on March 28th, 2011 and

24  subsequently adopted without comment by the district judge.  In

25  that case, the plaintiff's complaint was dismissed because of

the plaintiff's discovery misconduct, and so the Court didn't
reach the issue of the adequacy of the claims at all, not on
the motion to dismiss basis, not on a summary judgment basis,
not on any basis, and, in fact, in the magistrate's report and
recommendation, he said:

"I cannot conclude that plaintiff's claims were
frivolous or so lacking in factual or legal merit that an
award of attorneys' fees is appropriate."

He made it plain, or she, actually, I have not read the
name of the magistrate judge, that the basis of the
determination of the lawsuit didn't have anything to do with
the meritoriousness of the claims.

**MR. SMITH:**  And your Honor, I would say that at the
12(b)(6) stage, we'd be at the same exact posture, that the
Court is not allowed to make a decision on the merits at a
12(b)(6) stage.  The question that the Court is deciding at the
12(b)(6) stage is whether or not the plaintiff has sufficiently
pled a cause of action.  There are many cases where an inartful
pleading may result in a case being dismissed that has -- that
is very meritorious, and that's just the procedure where --

**THE COURT:**  Only if the Court -- only if the Court
concludes that further amendment would be futile.  That's why
we grant motions to dismiss without leave to amend, is because
we cannot think of facts that the plaintiff could -- I mean,
that's why I think it's a decision on the merits.  We might be

wrong, we might be reversed on appeal, but when we do that as

district court judges, it's because we don't think the

plaintiff could amend the complaint to allege something.  It's

not that -- anyway, I'm about to repeat myself.

       MR. SMITH:  And your Honor, you have every right to do

so, to control your docket, and we have no objection to your

Honor's ruling in doing so.  The issue is your Honor was not

faced with any evidence of the status of ownership or

registration other than the pleadings.  We had drafted and

filed a proposed amended complaint which went to those issues,

and your Honor, you had the discretion to move -- the case

wasn't moving along fast enough, and to dismiss it.  We would

still argue --

       THE COURT:  I cannot recall a time, including this

case, that I have ever thrown someone out of court because the

case wasn't moving fast enough.  I just felt the need to say

that, to clear up this transcript.  Go ahead.

       MR. SMITH:  I'm sorry, your Honor.  In terms of we had

over -- we have considerable time to put facts into the

complaint, and you felt that with that delay -- I'm sorry for

the word "choice," your Honor, of moving fast enough, but the

delay in bringing those facts and putting them in the

complaint, your Honor said while it doesn't seem plausible, it

may be that Mr. Choyce hadn't met the requirements of

registration of ownership.

1          Your Honor, moving on to the issue of the amount of fees.

2    And your Honor, your analogy of a baseball player I think is

3    very --

4          **THE COURT:**  Mr. Smith, I must have not written this

5    down correctly, but on the other case did you say 805 F.Supp.

6    2d 698?

7               **MR. SMITH:**  Yes, Your Honor, *Christopher & Banks*.

8          **THE COURT:**  Well, there is a case at that citation.

9          **MR. SMITH:**  I'm sorry?

10         **THE COURT:**  It's *United States of America versus Ted*

11   *Grauer*, that's the appeal of a child pornography conviction.

12         **MR. SMITH:**  I can't read my own handwriting, your

13   Honor.  I apologize, 805 F.Supp. 2d 693.  *Christopher & Banks*

14   *-v- Dillards, Incorporated*.

15         **THE COURT:**  Yes, I'm familiar with this case.  This is

16   a case in which more than one party sued for copyright

17   infringement, and the parties were related, and one of them had

18   a righteous claim.  And so then -- well, I hope I'm summarizing

19   this correctly -- three different parties sued on a copyright

20   theory.  Two of them could not possibly be valid owners of the

21   claim, and they were -- but the parties were related.  The

22   defendants moved for attorneys' fees, and the Court said, wait

23   a second, you're not injured by this.  There actually is

24   somebody with a legitimate copyright beef that sued you.  And

25   so you're not -- any kind of, you know, come on, you're not

1  really a prevailing party.  Yes, you scored a technical victory

2  against these two plaintiffs, but the victor was nominal.

3  Someone actually has alleged a valid, at least a facially valid

4  copyright claim against you.  How am I doing on the summary?

5       **MR. SMITH:**  I think okay, your Honor.  We focused on,

6  again, the issues, there was a pleading deficiency in that

7  case, and the defendants moved for attorneys' fees for those

8  pleading deficiencies, and the Court said, okay, I think there

9  was a $500 fee award in that case for that.

10      **THE COURT:**  Yes.

11      **MR. SMITH:**  And that's the point I'm trying to make

12  here, your Honor.  I think you did a good job of not letting

13  the case get out of control and saying, well, let's go forward

14  with discovery.  I don't know if it's -- it may be plausible

15  that if Mr. Choyce has met the registration requirements, I

16  think we'd be at a different posture there, your Honor, if that

17  occurred.  But you did a good job of controlling the case in

18  that it was:  We're not going to get past this pleading stage,

19  and there's no need to get to the merits, because it just

20  doesn't seem plausible that Mr. Choyce can amend to allow the

21  case to go further, and you utilized judicial resources as well

22  as the defendant's time.

23      Okay.  Your Honor, I'm going to move on to the issue of

24  the amount of fees.

25      Your Honor, you made it very clear to the plaintiffs, very

1    clear to the plaintiff's attorneys:  I'm giving you multiple
2    opportunities to plead this, you couldn't do it, case over;
3    right?  The defendants have now moved for attorneys' fees, and
4    we can't tell what is what.  And if we're going to get into an
5    issue of a party is entitled to any fee, the fair thing to do
6    is to either correct those deficiencies to allow us to respond
7    to whether or not a fee or an attorney's time is reasonable.

8        But we have a situation where we have Indybay
9    unconventionally, no declarations from the attorneys, saying
10   this is their hourly rates, no declaration from the attorneys
11   about their knowledge or know-how, or if they received this
12   amount of time or hourly rate in any other case before.  We're
13   left with a huge deficiency, your Honor, because I can't
14   argue -- I can't create an argument in a vacuum and say, well,
15   I don't know anything about these attorneys.  It just doesn't
16   sound fair.  Or, your Honor, we didn't give you any competent
17   evidence, but just take my word these fees aren't extravagant.
18   That's not meeting your burden, especially when you're asking
19   in excess of $50,000 in fees.

20       We also have the defendants asking for fees on preparing
21   the fee petition.  We have in excess of $15,000 by one
22   defendant, in excess of $16,000 for the time preparing the
23   motion.

24       Your Honor, if you recall on the second motion to dismiss,
25   you said this matter had been briefed sufficiently to not

1    allow -- to not require oral argument, and we had a

2    defendant -- you said unless you have an associate who is a two

3    years or I don't know if it was four years out, they could come

4    in and argue the motion, and one of the defendants said *yes, we*

5    *want that*, and then we get one of the defendants asking for us

6    to compensate them for that.

7        I mean, we really -- I'm not going to sit here and argue

8    with you, your Honor, that if we have a situation where you

9    have an aggressive plaintiff who does not have a valid

10   copyright, there's overtures from the defendants that say let's

11   resolve this early, and the plaintiff says no --

12       **THE COURT:**  That's something I want to say -- you're

13   welcome to make this argument.  It didn't work on the papers,

14   though, because they won.  They won.  They won a hundred

15   percent.  So when someone comes to you and says you need to sit

16   down at this table and resolve it, and then they just win a

17   hundred percent, I don't think later it makes them look bad.

18       Now, yes, as I said before, there are -- I understand why

19   Mr. Choyce was upset about the speech on the web site, and I

20   draw no conclusions about who is responsible for that speech or

21   whether it was or was not defamatory.  That's not my place to

22   do that.  But anybody would be upset if they read that speech,

23   and so it's not unreasonable for him to go out and try to get

24   people to do something about it.  But we're not talking about

25   all those issues in their entirety, we're talking about the

1    copyright claim.

2         **MR. SMITH:**  And your Honor, I think some cases that --

3    and I wish I had some cites for you, and I can provide them,

4    your Honor, which are analogous to this, when someone prevails

5    at summary judgment, and they say this case was frivolous, it

6    lacked merit, we should get attorneys' fees.  And we often see

7    courts say why didn't you bring this to my attention earlier?

8    Were those fees reasonable to incur those fees, especially in

9    exorbitant amount of fees, we're talking collectively a hundred

10   thousand dollars in fees when you have a party waiving the

11   white flag early on, and not only did the party wave the white

12   flag in private communications, but also in front of the Court.

13        Your Honor, in our first hearing before you, our

14   settlement negotiations came up, and you said *whoa, whoa, whoa,*

15   *stop right there, I'm not going to consider settlement*

16   *negotiations.*  But the point that was being made by our side

17   was, Your Honor, we're waving the white flag, you're exactly

18   right, we're limited to injunctive relief.  The picture is down

19   off the web site.  It doesn't make sense for us to go out to go

20   complete the registration process, continue this litigation

21   when it's in fact completely over and done with, because the

22   picture had been taken down, and the issue that we had was that

23   the jpeg was still being referenced on media --

24        **THE COURT:**  I'm not meaning to argue with you, but

25   after the first motion to dismiss, couldn't the plaintiff have

1   said, you know what, now we've done it, we've taken a serious

2   look at the Copyright Act, and we're never going to be able to

3   allege this.  You know what, we're just dismissing that claim,

4   and maybe we'll ask the Court to exercise supplemental

5   jurisdiction, or maybe we'll dismiss the case and refile in

6   state court, but that's never going to be a good copyright

7   claim, and that's that.  But that didn't happen.

8       And so yes, it's true, perhaps the copyright claim

9   lingered past its useful shelf life, but I don't know how

10   that's the defendant's doing.  That's the trouble I have with

11   the argument.

12       **MR. SMITH:**  Well, your Honor, the flaw in that

13   argument is that, as you recall when we first came to you, one

14   of the defendants were avoiding service, and our concerns were

15   that if we don't have a global resolution or we don't have both

16   parties served, we don't have any guarantee that we're going to

17   have deal with this again.

18       **THE COURT:**  But if it's not a good claim, that doesn't

19   matter.

20       **MR. SMITH:**  Well, Your Honor --

21       **THE COURT:**  Let's say -- I want you to imagine for the

22   sake of your argument that the claim was for replevin, a word

23   that none of us has had to think about since law school.  It

24   doesn't matter what replevin is.  We can all just agree it

25   doesn't have anything to do with this case.

1          **MR. SMITH:**  Okay.

2          **THE COURT:**  So the fact that defendants don't want to

3    meet with you or settle with you or deal with you, what bearing

4    could that possibly have on your bringing a claim, whether it's

5    okay for you to bring a claim for replevin, you know what I

6    mean?  As I hear it in my ears the hypothetical is not very

7    good.  I'm just saying yes, you have trouble serving them, they

8    didn't want to talk to you about settlement, things were not

9    going well in terms of getting people to the bargaining table,

10   but that only matters if one assumes or the record establishes

11   that it was a valid claim.  If it was never a valid claim, the

12   fact that someone is evading service or not talking to you is

13   not what's prolonging the litigation.

14         **MR. SMITH:**  That's not the posture of our case, and if

15   Your Honor rules *hey, you didn't plead the elements of your*

16   *replevin claim,* that's different from saying your replevin

17   claim is not meritorious.  I mean, we have a situation --

18         **THE COURT:**  What would you have pled?  I'm struggling

19   not to ask you that, but you keep bringing me back there.

20         What would you have pled that would have made this a good

21   copyright claim?

22         **MR. SMITH:**  Your Honor, it comes down to the issue of

23   the issue of work for hire.  There's a split in the districts

24   regarding what the work-for-hire is.  You cited the Third

25   District case that said it has to be your employee cannot be an

1    independent contractor.  So the issue of whether or not this

2    work-for-hire would have been a meritorious claim would have

3    come down to some legal arguments.

4         **THE COURT:**  That's helpful.

5         **MR. SMITH:**  I'm sorry?

6         **THE COURT:**  That's helpful.

7         **MR. SMITH:**  And that's the basis of that claim, if we

8    would have gotten to the merits, and your Honor would have had

9    to look at who the photographer was, what was his working

10   relationship with Mr. Choyce, was he an independent contractor,

11   did they have some type of an employment status.  Those are the

12   factors we would have had to look at if we got to that point.

13        Your Honor, I just think the same standards that we were

14   held to in our pleadings, which is that we don't -- if you

15   can't articulate the basis for relief, the case is over.  If

16   you can't articulate the basis for your attorneys' fees, you

17   don't get them.  You don't get a do-over.  You don't get to say

18   *oh, just take my word for it, it was for this, it wasn't for*

19   *that.*

20        The record of this case is very clear, Your Honor, and you

21   started out saying *I love Anti-SLAPP cases from my work in*

22   *state court*, and we focused on that for 90 percent of the

23   hearing.  At both hearings we focused on Anti-SLAPP, and

24   whether or not Mr. Choyce was a public figure, and should he

25   have some type of special protection from Anti-SLAPP, because

1    he's a member of the bar or is he public or not, and that was

2    the main thrust of his case.

3        This wasn't an issue about is this a copyright issue.  It

4    was not even discussed the first time around.  It was -- the

5    only issue we had the first time around when we had one of the

6    defendants here was hey, is this moot?  The picture is down.  I

7    can't imagine this coming back up with this issue before the

8    Court.  And I said, your Honor, we don't have --

9        **THE COURT:**  The validity of the copyright claim was

10   not litigated in the first round; is that what you're telling

11   me?

12       **MR. SMITH:**  Your Honor, no, it was not.  The issue was

13   your concern -- your main concern at oral argument was is it

14   moot.

15       **THE COURT:**  I'm not talking about oral argument.  The

16   issue of copyright was not presented in the first round of

17   motions?

18       **MR. SMITH:**  Oh, no, because --

19       **THE COURT:**  I didn't have to read briefs on that

20   subject, the other side didn't have to write them, you didn't

21   have to respond to them?  That didn't happen?

22       **MR. SMITH:**  Well, the issue, because we filed the

23   complaint and it was subsequently registered, the copyright,

24   and we said, *Hey look, I've gotten notice that you've just*

25   *registered that.  Those facts are not in the complaint, so go*

1    *ahead and amend, because I don't have that information before*

2    *me.  I just know that the registration happened subsequently.*

3    And then the issue was then -- and how you addressed us is *do*

4    *you -- you know, you're going to be limited to the injunctive*

5    *relief only, and is that going to be necessary in light of the*

6    *fact that the picture has been taken down?*  And that was the

7    issue, just a weird procedural snafu, and that's why it really

8    wasn't an issue, because it wasn't before the Court because of

9    the procedural posture.

10         **THE COURT:**  Yes, I don't, as I sit here, specifically

11   recall the hearing, but if the point I made was that since the

12   picture has been taken down it seemed unlikely that injunctive

13   relief would be available, and that's all you're seeking under

14   the Copyright Act; is that what you're indicating?

15         **MR. SMITH:**  Yes, Your Honor.

16         **THE COURT:**  And then did you subsequently make a

17   copyright -- continue to press a Copyright Act claim?

18         **MR. SMITH:**  We did, your Honor.

19         **THE COURT:**  For injunctive relief?

20         **MR. SMITH:**  Yes, Your Honor, because we did not have

21   the second defendant served.

22         Now, once they got your ruling, your Honor, they show up,

23   they're happy, and they're going to say, *oh, look, we're going*

24   *to go get fees from these guys.*  And we think -- and, your

25   Honor, this is -- when you have these type of offensive moves,

we talked to the defendant and we said, *Listen*.  *We just want to resolve this*.  *Let's get this over and done with*.  They said, *Well, can you give us some time to do our responsive pleading*?  We said, *No problem*.  Never meeting and conferring with us about the subject matter of these motions to dismiss. They run in and they file it, and they do so with the plan to get $50,000 in fees.  That's not the purpose of attorneys' fees.  That's not.

We, as members of the bar, have to work cooperatively to get these things resolved.  This is not a situation where the plaintiff was obstinate, was saying we're just doing this to stick it to you guys, and that's why it's very important to look at the posture of this case, and how we have these defendants playing the game of who is on first, who is on second.  They get a favorable ruling, and they come out and they incur $60,000 in fees when it really wasn't even necessary.  They could have joined in the motion.  You didn't have to have two separate motions.  You don't have to have two separate motions for fees where they're asking for $16,000 for preparing this motion.  It's just not necessary.

Now -- and so if you want me to tell you what the best decision an arbitrator should make in this case, I would first say that the case wasn't decided on the merits.  But assuming the arbitrator says it was, the issue then becomes the amount of fees.  On this record, the arbitrator does not have enough

```
1    information to make an informed decision.  And I would say my
2    client's due process rights are going to be violated if he's
3    required to pay fees based on block billing, and based upon
4    hours requested with no declaration from the attorneys,
5    especially when we have the Anti-SLAPP issue being the
6    majority, super majority of what the parties were claiming.
7         So I would ask, if your Honor is inclined to grant fees,
8    to allow for a fair process for us to respond to the amount of
9    fees requested.  But I don't think it's necessary to get there,
10   because the matter wasn't decided on the merits.
11             THE COURT:  Thank you.
12             MR. SMITH:  Thank you, your Honor.
13             THE COURT:  Brief reply.
14             MS. KNOX:  On the declarations issue --
15             THE COURT:  I have it in front of me.
16             MS. KNOX:  Okay.  It's 59-1 and 59-2 in the docket, is
17   my declaration and Roger Meyers' declaration.
18             THE COURT:  Address the Court, not opposing counsel,
19   please.
20             MS. KNOX:  I apologize.  So our qualifications, hourly
21   fees and so forth, are set forth in there.
22         Regarding this issue about the merits, what they're
23   suggesting is that we take this case to summary judgment or to
24   trial just to get some sort of ruling on what they are
25   considering the merits, but that would have been nothing more
```

```
 1    than an advisory opinion, because on liability -- because they
 2    had no standing to sue.  So I'm not quite sure -- it would have
 3    been a waste of judicial time and resources for us to continue
 4    to try to get to the merits in order to get an award of
 5    attorneys' fees.  We wanted to be efficient, and that's why we
 6    filed the motion to dismiss, and we did get it dismissed at a
 7    very early stage in the litigation, and we shouldn't be
 8    penalized for that.
 9         With respect to the furthering the purposes of the
10    Copyright Act, an award of fees here would encourage defendants
11    to assert meritorious defenses to meritless lawsuits such as
12    this, and we don't -- overzealous use of the Copyright Act can
13    suppress --
14         THE COURT:  I think the Supreme Court has already
15    spoken to this issue.  I don't think you need to address it.
16         MS. KNOX:  Okay.  Thank you.
17         THE COURT:  And on the question -- I have thought
18    about should I -- should I go down the path of thinking about
19    whether the claims sufficiently relate to the production of
20    art, and that sort of thing?  I just don't think district
21    courts can get involved in that.  I just don't think the
22    Congress or the Supreme Court have in mind that individual
23    members of the judicial branch are going to impose their views
24    as to what constitutes art, and that sort of thing.  I just
25    don't think it's relevant.
```

1          **MS. KNOX:**  Well, thank you, your Honor.

2          Your Honor -- well, I think -- I guess moving on to the

3     amount of fees here.  We did take great care to use billing

4     judgment, as set forth in the declarations, and also in my

5     declaration on reply, to make sure that we were only asking for

6     fees for time spent on the copyright portion of this.

7          They also take issue with us requesting oral argument and

8     asking for fees on oral argument.  That oral argument really

9     benefited everybody, and it could have benefited them.  They

10    were given an opportunity yet again for a fourth or fifth time

11    to try to plead their case, and they were not able to do that.

12         On the issue of settling early, I mean, that would have

13    really kind of flown in the face of the second purpose of the

14    Copyright Act, which is to encourage --

15         **THE COURT:**  I don't think you need to address that

16    point.

17         **MS. KNOX:**  Pardon?

18         **THE COURT:**  I don't think you need to address that

19    point.

20         **MS. KNOX:**  Okay.  Thank you.

21         **THE COURT:**  The only way for you to settle the

22    copyright claim --

23         **MS. KNOX:**  Pardon?

24         **THE COURT:**  I said the only -- I said the only way for

25    you to settle the copyright claim would be for you to give the

1    plaintiffs something in exchange for it.  But it didn't have

2    any merit, so I would have a hard time finding that you -- that

3    there was some obligation on your client's part to do something

4    that it didn't do.  It doesn't mean, as I said before in

5    response to plaintiff counsel's argument, that the speech

6    wasn't a harmful speech or that someone didn't have an

7    obligation to take steps to take it down.  Those issues are not

8    before me today.  But on the copyright claim, I don't think I

9    can find that there's some act that defendants should have

10   taken that they didn't take.

11        **MS. KNOX:**  Okay.  Thank you, your Honor.

12        With respect to the work-for-hire argument that they

13   brought up, and I haven't reviewed those cases recently, but my

14   recollection is that if this were a work-for-hire, it would

15   have had to be an employee -- and not just an employee of

16   Mr. Choyce's, but somebody who was hired specifically to take

17   photographs for his law firm.  And in your order you recognized

18   that that was highly unlikely that a small law firm would have

19   an individual employed like that.

20        And finally, I just want to say that we didn't litigate

21   this case to get fees.  We litigated it to get the -- to get

22   the copyright claim dismissed, which we did.  They had an

23   opportunity a week before we filed our fees, or six days before

24   we filed our fees, we attempted to stipulate to fees.  We gave

25   them the opportunity to do that, and it didn't work out.  So

```
 1  here we are, and we're asking for fees on both the motion to
 2  dismiss and our fees on fees.
 3          THE COURT:  Thank you.
 4      Mr. Casas, last words.  You're not required to have any,
 5  but you can.
 6          MR. CASAS:  Very briefly, your Honor.  The waiver of
 7  the white flag comment I find interesting in light of the fact
 8  that there was not a legal basis for issuing the take down
 9  notices, let alone the original complaint, First Amended
10  Complaint and the proposed Second Amended Complaint.  Thank
11  you.
12          THE COURT:  Normally that's it, because it's their
13  burden.  But if plaintiffs want a last word, they can have one.
14          MR. SMITH:  Your Honor, I just want to address -- I
15  misspoke when I made reference to the declaration that was
16  Layer42, not Indybay.  I get them confused sometimes when it's
17  about the hours from the attorneys.
18      And unless you have any questions for me, I will submit.
19          THE COURT:  I don't.  Thank you, all.  Motion is now
20  under submission.
21              (Proceedings adjourned at 3:24 p.m.)
22
23                       ---oOo---
24
25
```

1

2

3 **CERTIFICATE OF REPORTER**

4         I certify that the foregoing is a correct transcript

5 from the record of proceedings in the above-entitled matter.

6

7 DATE:   Friday, September 25, 2015

8

9

10

11 _____

12 Rhonda L. Aquilina, CSR No. 9956, RMR, CRR
                Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25

Roger Myers (CA State Bar No. 146164)
roger.myers@bryancave.com
Leila Knox (CA State Bar No. 245999)
leila.knox@bryancave.com
Jessica Mar (CA State Bar No. 293304)
jessica.mar@bryancave.com
**BRYAN CAVE LLP**
560 Mission Street, 25th Floor
San Francisco, CA 94105-2994
Telephone:    (415) 675-3400
Facsimile:    (415) 675-3434

Attorneys for Defendant
SF BAY AREA INDEPENDENT MEDIA CENTER

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DIONNE CHOYCE, | Case No. CV-13-1842-JST |
| Plaintiff, | **REPLY IN SUPPORT OF DEFENDANT SF BAY AREA INDEPENDENT MEDIA CENTER'S MOTION FOR AWARD OF ATTORNEYS' FEES PURSUANT TO 17 U.S.C § 505** |
| v. | |
| SF BAY AREA INDEPENDENT MEDIA CENTER, a.k.a. IMC, SF BAY AREA, a.k.a. SF BAY AREA IMC; an unincorporated association; LAYER42.NET, INC., a California Corporation, CERNIO TECHNOLOGY COOPERATIVE, an unincorporated association, and DOES 1-10, | Hearing Date: September 4, 2014<br>Time:           2 p.m.<br>Judge:         Hon. Jon S. Tigar<br>Courtroom:  9 |
| Defendants. | Documents Filed Herewith:<br><br>(1) Supplemental Declaration of Leila Knox<br>(2) [Amended Proposed] Order |

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

**INTRODUCTION**

In his opposition, Plaintiff makes the argument for Defendant SF Bay Area Independent Media Center ("Indybay") that his copyright suit was objectively unreasonable, and therefore only a short reply brief is necessary. Plaintiff would like to quietly slip out this Court's side door penalty free after wasting judicial time and resources in his attempt to prosecute a copyright claim he had no basis to bring in the first place, and asks the Court to ignore and/or forget his aggressive and unfounded pursuit of that claim – when he had never had a copyright to begin with – on the grounds that the Court's dismissal was merely "technical" or "de minimis." The Court should not allow Plaintiff to escape so easily. The Copyright Act's attorneys' fees provision was intended, in part, to prevent meritless lawsuits such as the one brought by Plaintiff. Now that the legal relationship between Plaintiff and Indybay is forever changed in light of the Court's dismissal with prejudice, Indybay respectfully submits there's no doubt that it should be awarded its fees and costs in the amount requested for having to defend against Plaintiff's groundless claim.

**I.**

**DISMISSAL WITH PREJUDICE IS UNDOUBTEDLY A MATERIAL ALTERATION OF THE LEGAL RELATIONSHIP BETWEEN THE PARTIES AND THEREFORE INDYBAY IS THE PREVAILING PARTY FOR PURPOSES OF ATTORNEYS' FEES**

Try as he might, Plaintiff cannot avoid controlling precedent in this circuit explaining that where a claim is dismissed with prejudice, the defendant is the prevailing party since "the plaintiff is judicially precluded from refiling the claim against the defendant in federal court." *Cadkin v. Loose*, 569 F.3d 1142, 1150 (9th Cir. 2009) (dismissal was *without* prejudice, with plaintiffs free to refile their copyright claims, and therefore defendants were *not* prevailing parties). There is nothing "technical" or "de minimis" about the Court's dismissal of Plaintiff's claim, since the legal relationship between the parties has been forever "materially alter[ed]" in such a way that "[Indybay] does not remain subject to the risk that the Plaintiff will re-file." *Salinas v. Wachovia Mortgage*, 2011 WL 5513456, *2 (E.D. Cal. 2011); *accord Lopez v. Wachovia Mortgage*, 2010 WL 3034167, *2 (E.D. Cal. 2010); *U.S. v. One 2008 Toyota Rav 4 Sports Util. Vehicle*, 2012 WL 5272281, *2 (C.D. Cal. 2012). Plaintiff therefore cannot claim that there has not been a "material[] alter[ation] of the legal relationship between the parties," *Fischer v. SJB-P.D. Inc.*, 214

SF01DOCS\211255.1      1
REPLY IN SUPPORT OF MOT. FOR AWARD OF ATTY FEES      CASE NO. CV-13-1842-JST
SER 037

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

F.3d 1115, 1118 (9th Cir. 2000), since every case in the Ninth Circuit discussing dismissal with prejudice, and the entitlement to attorneys' fees under various statutes, says otherwise. *See*, *e.g.*, *United States v. Ito*, 472 F. App'x 841, 842 (9th Cir. 2012) (district court's dismissal should be *with* prejudice so defendants could claim status as prevailing parties and move for attorneys' fees under federal statute); *Bruce v. Teleflora, LLC*, 2014 WL 2710974, *2 (C.D. Cal. 2014) (defendant was prevailing party, with the right to recover costs, even where dismissal with prejudice was voluntary); *Slep-Tone Entm't Corp. v. Backstage Bar & Grill*, 2013 WL 1196681, *1 (C.D. Cal. 2013) (defendant was prevailing party following dismissal with prejudice); *Salinas*, 2011 WL 5513456 at *2; *Lopez*, 2010 WL 3034167 at *2. As such, there is no doubt here that Indybay is the prevailing party for purposes of attorneys' fees under the Copyright Act.

## II.

### PLAINTIFF PRESENTED NO REASON WHY THE COURT SHOULD NOT EXERCISE ITS DISCRETION AND AWARD ATTORNEYS' FEES TO INDYBAY

Since Plaintiff cannot seriously deny Indybay is the prevailing party here for purposes of attorneys' fees, he attempts to convince the Court that it should not exercise its discretion and award Indybay its fees because, among other things, he claims Plaintiff did not prevail on the merits and an award of such fees would do nothing to further the purposes of the Copyright Act.

### A.    Indybay's Success Was Far More Than Technical

Plaintiff's repeated attempts to mischaracterize Indybay's success as a mere technicality rests on a misunderstanding of the importance of the standing requirement under the Copyright Act, which Congress took great care to limit to the owners of a copyright in order to protect arts and letters from lawsuits by those claiming some interest in a work. *Silvers v. Sony Pictures Entm't*, 402 F.3d 881, 886-87 (9th Cir. 2005) ("only owners of an exclusive right in a copyright may sue").

Unlike the "pleading error" in the Southern District of Iowa case cited by Plaintiff, in which three related corporate entities with similar names (C&B Inc., C&B Corp., and C&B Co.) were Plaintiffs, and two of the three were dismissed because they were found not to be the copyright owners, *Christopher & Banks Corp. v. Dillard's, Inc.*, 805 F. Supp. 2d 693, 697 (S.D.

1   Iowa 2011), Plaintiff's "error" was much more substantial, and one that he repeatedly failed to

2   cure (because he couldn't) despite numerous opportunities to do so from the Court.  June 2, 2014

3   Order at 7-8 ("June 2014 Order").  In the case relied on by Plaintiff, the remaining plaintiff – C&B

4   Co. – could continue to litigate the case against the defendant.  Here, there's nothing left.  Plaintiff

5   is finished, done, kaput.  A defendant should not have to litigate the merits of a claim brought by a

6   plaintiff who had no business bringing the claim in the first place in order to recover attorneys'

7   fees.  Without standing, there were never any merits to get to in the first place, and not awarding

8   fees would encourage meritless lawsuits by those without standing and would send a discouraging

9   message to future defendants put in the same position as Indybay.  Indybay, therefore, has

10  achieved the type of complete and total success that warrants an award of attorneys' fees.

   **B.      Plaintiff's Desire To Have A Photo He Did Not Own Rights In Removed
            From Indybay's Website Does Not Make His Suit "Objectively Reasonable"**

13          Plaintiff fuses his desire to have his photo removed from the Indybay website with the core

14  issue of whether his instigation and, more importantly, maintenance of this lawsuit – specifically

15  his claim for copyright infringement – was reasonable.  Contrary to what Plaintiff still mistakenly

16  claims, he never had the "right to protect [the] registered copyright" for all the reasons described

17  in Indybay's original motion to dismiss and summarized in its opening brief in connection with the

18  instant motion.  Dkt. 42 at 2-4; Dkt. 59 at 6-8.  Plaintiff never owned a copyright in the photo,

19  June 2014 Order at 8, and there's nothing that Plaintiff can say or do that will change this fact.

20          In many ways, Plaintiff's position with respect to his purported "right to protect" the

21  copyright he never owned – in a photograph he did not take – is even more unreasonable than the

22  position taken by the plaintiff in *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d

23  881, 885 (9th Cir. 1996).  In that case, the court inferred from the evidence that the plaintiff had

24  instituted the lawsuit to "secure a competitive advantage in marketing its videocassette," *id.* at

25  889; in this case, Plaintiff admits he used this lawsuit and his copyright claim to try to get Indybay

26  to take action and remove his photo from the website, Opp. 9 ("Throughout this litigation,

27  Plaintiff's primary concern was that the image and web page would be taken down and that

28  Plaintiff would be assured that the image and posting would not reoccur."), despite the fact that he

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

had no legal basis for seeking to compel Indybay to take such action.[1] More tellingly, by the time Plaintiff filed his original complaint in April 2013, and certainly by the time he filed his First Amended Complaint in December 2013, the image had long been removed from the Indybay website, Dkt. 32, ¶ 11, and yet Plaintiff continued on even though his "primary concern" – i.e., removal of the photograph from the site – had been addressed. This further illustrates the sort of "objective unreasonableness" in Plaintiff's continued pursuit of judicial relief that supports an award of fees under *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 n.19 (1994).[2]

## C. Awarding Fees To Indybay Furthers The Purposes Of The Copyright Act

As the Supreme Court has held, "a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright." *Id.* at 527 (internal quotations and citations omitted). "[D]efendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them" in part because such litigation ultimately encourages the promotion of "broad public availability of literature, music and the other arts." *Id.* at 526-27. Indybay's successful defense of the copyright claim is consistent with this goal, i.e., maintaining the boundaries of liability and thus broadening the material available to the public. *Love v. Mail on Sunday*, 2007 WL 2709975, *5 (C.D. Cal. 2007) (successful defense of copyright action on motion to dismiss where plaintiff lacked standing furthered the purposes of the copyright law and protected the utility of copyright licenses), *aff'd sub nom. Love v. Associated Newspapers, Ltd.*, 611 F.3d 601 (9th Cir. 2010) (affirming award of attorney fees).

---

[1] Indeed, Plaintiff should be relieved that none of the parties here have brought a countersuit under the Digital Millennium Copyright Act, 17 U.S.C. § 512(f), for Plaintiff's "knowing[] material[] misrepresent[ation]" that he or his attorneys were authorized to demand a takedown of the photograph in the first place. The DMCA requires, under penalty of perjury, that in making such a request, a complaining party must state that he "is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed." 17 U.S.C. § 512(c)(3)(A)(vi).

[2] Plaintiff also argues Indybay must demonstrate that Plaintiff's copyright claim was "harassing," a standard that may apply to Rule 11 sanctions, as noted at Opp. 8, but is not one of the factors for a court to consider under *Fogerty*. Plaintiff cites no authority supporting his view, probably because there is none. Indeed, on remand from the Supreme Court, the Ninth Circuit affirmed an award of $1,347,519.15 in attorneys' fees even though the plaintiff's lawsuit was "neither frivolous nor prosecuted in bad faith." *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 556 (9th Cir. 1996).

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

As explained by Judge Posner, when a defendant prevails on a copyright claim, "the presumption in favor of awarding fees is very strong." *Assessment Technologies of Wi., LLC v. WIREDdata, Inc.*, 361 F.3d 434, 439 (7th Cir. 2004) (*citing Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 506 (4th Cir. 1994)). "For without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from exercising [its] rights." *Id.* In short, attorneys' fees awards "are the rule rather than the exception and should be awarded routinely." *McGaughey v. Twentieth Century Fox Film Corp.*, 12 F.3d 62, 66 (5th Cir. 1994).

Indybay should be compensated for the costs of defending against Plaintiff's unmeritorious copyright claim. "Baseless claims … are inimical to the purposes of the Copyright Act." *Zobmondo Entm't LLC v. Falls Media LLC*, 2009 WL 202034 (C.D. Cal. 2009). There is no requirement that Plaintiff be a vexatious serial litigant for the award of attorneys' fees to Indybay, which in this case also serves purposes of deterrence in that it helps prevent the filing of similarly meritless copyright actions by would-be plaintiffs. *See Bernal v. Paradigm Talent & Literary Agency*, 2010 WL 6397561, *2 (C.D. Cal. 2010) (awarding fees to defendant, even where there was no indication of bad faith by plaintiff, and noting that award serves purposes of deterrence for other would-be plaintiffs); *Zobmondo Entertainment LLC,* 2009 WL 202034, *3 (baseless copyright claims are "inimical to the purposes of the Copyright Act" awarding fees for successful defense); *Identity Arts v. Best Buy Entertainment Servs., Inc.,* 2008 WL 820674, *6 (N.D. Cal. 2008) (noting fee award would aid in deterring other would-be plaintiffs from prosecuting any similarly ill-advised and meritless claims for copyright infringement).

## III.

## INDYBAY'S REQUESTED ATTORNEYS' FEES ARE REASONABLE

The lodestar method yields a fee that is presumptively reasonable in statutory fee cases, and that presumption is a "strong" one. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (citations omitted). In "rare circumstances," the court may adjust the lodestar figure to reach a more reasonable result on the basis of additional factors not considered in the lodestar calculation. *See Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996), *amended on other grounds,* 108 F.3d 981 (9th Cir. 1997). "The party opposing the fee application has a burden

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992), *citing Blum v. Stenson,* 465 U.S. 886, 892 n.5 (1984); *Toussaint v. McCarthy,* 826 F.2d 901, 904 (9th Cir. 1987). Here, Plaintiff offers no evidence that could carry his burden of overcoming the "strong presumption" that the lodestar figure represents a reasonable fee, *Perdue*, 559 U.S. at 546, let alone the "specific evidence" required to support "detailed findings" by this Court that this is one of the "'rare' and 'exceptional' cases" where "the lodestar amount is … unreasonably high." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (citations omitted).

**A.  Indybay's Time Spent On Defense Of The Copyright Claim Was Reasonable**

Far from Plaintiff's accusation that the fees sought here are "excessive" or "unreasonable," the evidence submitted by Indybay shows it was not only reasonable, but conservative in its request for fees. For example, Indybay only requested fees for Ms. Knox at her 2013 rate of $430 per hour, rather than her 2014 rate of $480 per hour. Also, Indybay is not requesting fees for time spent by Mr. Myers, the senior partner on the case with 24 years of experience, in connection with preparation for the hearing on the motion to dismiss. Knox Decl., ¶ 7; Supp. Knox Decl., ¶ 4.

Not only does Plaintiff offer no evidence to overcome the "strong presumption" that Indybay's requested fees are reasonable, but Plaintiff does not dispute court have awarded comparable fees in similar copyright cases. *See DuckHole Inc.,* 2013 WL 5797204, *6 (awarding $65,781 in attorneys' fees to defendants for copyright infringement case after court granted motion to dismiss); *Maljack Prods., Inc.*, 81 F.3d at 890 (affirming district court's award of $162,175.04 after granting summary judgment); *Bernal*, 2010 WL 6397561, *7 (awarding $218,252.20 in attorney fees for defense of a copyright infringement claim after granting motion for summary judgment). Similarly, a district court in New York recently awarded $84,375 in attorneys' fees plus costs to defendants who prevailed at the motion to dismiss stage in a copyright infringement case. *Pyatt v. Raymond*, 2012 WL 1668248, *8 (S.D.N.Y. 2012) (awarding $84,375 total in attorneys' fees to prevailing defendants prevailing on motion to dismiss copyright claim, $28,125 to each set of three defendants).

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

The amount of time Indybay expended in this matter was reasonable and necessary to quickly and completely dispose of Plaintiff's copyright claim, and Plaintiff offers no evidence to the contrary.

**B.** **Indybay Submitted Time Records Attributable Solely to the Copyright Claim**

Plaintiff offer not a shred of evidence to support his baseless claim that Indybay's hours are not reasonable because it has "not segregated the copyright claim work" and has "block-billed." Opp. 12. This assertion is simply not true. Indybay's motion for fees and supporting declarations clearly state that the fees requested were only those attributable to the work on the copyright claim.[3] Knox Decl. ¶¶ 5, 6, 9; Supp. Knox Decl., ¶ 2. For time entries that related to work on Plaintiff's copyright and defamation claim, Indybay exercised billing judgment to only claim time that was necessarily and reasonably expended on the defense of Plaintiff's copyright claim. Knox Decl. ¶¶ 6, 9. Where time entries related to work on both the copyright and defamation claims, billing judgment was exercised to carefully and conservatively ensure Indybay did not request time that was not properly spent on the copyright claim. Supp. Knox Decl., ¶ 2. Indeed, Indybay's time records show that more than $138,000 worth of work was performed by counsel overall on the motion to dismiss and anti-SLAPP motion to strike between December 2013 and March 2014. The amount in fees that Indybay is requesting solely for the defense of the copyright claim during that same period – only $26,002 – is a mere fraction of that amount. Supp. Knox Decl. ¶ 3.

**C.** **Indybay's Motion Is Supported By Sufficient Documentation**

Indybay's time records submitted in support of its motion are sufficiently specific to allow the Court to determine whether the fees claimed are reasonable. *Hensley v. Eckerhart*, 461 U.S.

---

[3] Plaintiff alleges Indybay dragged out the dispute by avoiding service (and worked in concert with co-defendants to achieve the same). Opp. at 1. Plaintiff provides no factual support for these bare allegations, nor could he. Indybay, through its counsel, made every attempt to cooperate and appear in the case once counsel became aware that service had been attempted, but it was Plaintiff who would not cooperate. Dkt. 23-1, ¶¶ 7-8. In any event, Indybay is not requesting fees in connection with this service dispute, and Plaintiff has not specified, nor could he, how this distraction had any effect on the time or effort Indybay put into defending against the copyright claim.

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

424, 437 n.12 (1983) ("counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures."). Indybay submitted time records extracted from the firm's timekeeping database that sufficiently describe the general subject matter of the time spent.[4] Knox Decl. ¶ 6. Plaintiff excerpts a handful of entries as not being sufficiently described to support a reasonable fee on the copyright claim. Opp. 13. However, looking at these time entries in the context of the overall billing records, it is clear this time was reasonably and necessarily expended to defend against the copyright claim.

Plaintiff also takes issue with the time Indybay expended drafting its reply brief. Opp. 14. On that reply, Indybay spent time reviewing, analyzing, and responding to both Plaintiff's opposition and proposed Second Amended Complaint submitted in opposition to co-defendant Layer42, Inc.'s motion to dismiss. Dkt. 37-1; Dkt. 42 at 3. At this stage of litigation, Plaintiff raised his belatedly obtained registration for copyright of the photo at issue, which Plaintiff attempted to use as the sole basis for his claim that he alleged "absolute ownership." Dkt. 37 at 3-4. Indybay expended time responding to the copyright issues raised both in Plaintiff's opposition and proposed Second Amended Complaint that, if granted by the court, would also become the operative complaint against Indybay. Dkt. at 3. Indybay therefore had a keen interest in analyzing and addressing the proposed Second Amended Complaint in its reply on the motion to dismiss so as to dispose of the unmeritorious copyright claim efficiently and swiftly.

Plaintiff also takes issue with the 9.6 hours of time expended by Ms. Knox preparing for the hearing on the motion to dismiss. Opp. 14. This included time spent reading the relevant case law, holding moot court, and preparing for arguments on the copyright claim not included in the briefing that Plaintiff might raise at the hearing. For example, Plaintiff claimed for the first time at the hearing that the photograph was a work for hire, and in anticipation of this, counsel for Indybay took the time to conduct additional research into this doctrine so as to be prepared to

---

[4] Because this case was taken on a pro bono basis, invoices were not prepared and sent to the client for payment. Knox Decl., ¶ 6.

1   respond. Indybay did not include the two hours of attorney time spent attending the hearing by

2   Ms. Knox. Supp. Knox Decl., ¶ 5.

3          Plaintiff relies on *Hensley*, a case where the court reduced the amount of attorneys' fees, in

4   part due to failure to keep contemporaneous time records or summaries that would allow the

5   reviewing court to determine the general subject matter of the time spent. *Hensley*, 461 U.S. at

6   371. The case is inapposite here, as all of the time records submitted are based on

7   contemporaneous time records extracted from the firm's timekeeping database and contain

8   descriptions of the general subject matter of the time spent.[5] Knox Decl. ¶ 6.[6]

9          **D.     Time Spent by Indybay On This Fees Motion Is Recoverable Under The
           Established Law Of The Ninth Circuit**

10

11         Finally, Plaintiff argues Indybay is not entitled to fees incurred in connection with bringing

12  this motion. But as the Ninth Circuit has held, "[i]n statutory fee cases, federal courts, including

13  _____

14  [5] Plaintiff's claim that admissible evidence is required to support an award of attorney fees is not
    supported by the case law. Opp. 13. Even if Indybay had not submitted contemporaneous time

15  records, as it did here, it could still be eligible for an award of attorney fees. *Frank Music Corp. v
    Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1557 (9th Cir 1989) (contemporaneous time records

16  not required when request is reasonable and supported by other evidence); *U.S. v $12,248 U.S.
    Currency*, 957 F.2d 1513 (9th Cir. 1992); *Lobatz v U.S. W. Cellular, Inc.*, 222 F.3d 1142, 1149

17  (9th Cir. 2000) (trial court did not err by relying on time summaries rather than on
    contemporaneous records); *U.S. v City & County of San Francisco*, 748 F Supp. 1416, 1433 (N.D.

18  Cal. 1990), *aff'd in part and rev'd in part sub nom Davis v City & County of San Francisco*, 976
    F.2d 1536, 1542 (9th Cir. 1992), *modified on other grounds*, 984 F.2d 345 (9th Cir. 1993)

19  (approving use of time records reconstructed from litigation files and other records, noting that
    Ninth Circuit permits "reconstructed" records and that vague entries on time records may be

20  explained by reconstructions based on other notes and files as well as on context of entry).

21
    [6] If the Court determines it would be helpful to see additional records, Indybay can – and should

22  be allowed to – submit supplemental documentation. *Traditional Cat Ass'n v Gilbreath*, 340 F.3d
    829 (9th Cir. 2003) (error to deny fees altogether because fee claimant had not apportioned fees

23  between fee-shifting and non-fee-shifting claims; court must give parties opportunity to do so, and
    if they cannot, must attempt to do so itself); *In re Washington Pub. Power Supply Sys. Sec. Litig.*,

24  19 F.3d 1291, 1305 (9th Cir. 1994) (remanding to district court to consider more detailed records
    submitted on reconsideration); *Stewart v Gates*, 987 F.2d 1450, 1452 (9th Cir. 1993) (if time

25  records illegible, court should reduce accordingly or require supplemental submission). If the
    Court wants further information about the specific tasks performed, Indybay is willing to submit

26  billing records related to both the defamation and copyright claims to the Court for *in camera*

27  review.

28

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

1  [the Ninth Circuit], have uniformly held that time spent in establishing the entitlement to and

2  amount of the fee is compensable." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir.

3  2008) (*quoting In re Nucorp Energy, Inc.*, 764 F.2d 655, 659-60 (9th Cir. 1985)). "This is so

4  because it would be inconsistent to dilute a fees award by refusing to compensate attorneys for the

5  time they reasonably spent in establishing their rightful claim to the fee." *Id.* (citations omitted).

6  Moreover, courts have awarded "fees-on-fees" under Section 505 of the Copyright Act where the

7  fees were "incurred in connection with [defendant's] application for fees during remand." *Fantasy*

8  *Inc. v. Fogerty*, 1995 WL 261504, *7-8 (N.D. Cal. 1995), *aff'd* 94 F.3d 553 (9th Cir. 1996). The

9  full amount of fees spent on this motion should therefore be awarded to Indybay.

## CONCLUSION

12      Indybay has spent an additional 30 hours on this reply, representing a total of $13,730 in

13  additional fees, and expects to spend an additional six hours, representing $2,580 in fees, on the

14  hearing on this motion. That brings the total amount of fees and costs sought on this motion to

15  $30,430. Supp. Knox Decl., ¶¶ 6-7. Indybay respectfully requests that the Court grants its motion

16  for attorneys' fees and costs in full in the amount of $59,836.11.

17  Dated: August 8, 2014          Respectfully submitted,

18                                  **BRYAN CAVE LLP**

19
20                                  By: _____/s/_____
                                        Leila Knox

21                                  Attorneys for Defendant
                                SF BAY AREA INDEPENDENT MEDIA CENTER

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

SER 046

Roger Myers (CA State Bar No. 146164)
roger.myers@bryancave.com
Leila Knox (CA State Bar No. 245999)
leila.knox@bryancave.com
Jessica Mar (CA State Bar No. 293304)
jessica.mar@bryancave.com
**BRYAN CAVE LLP**
560 Mission Street, 25th Floor
San Francisco, CA 94105-2994
Telephone: (415) 675-3400
Facsimile: (415) 675-3434

Attorneys for Defendant
SF BAY AREA INDEPENDENT MEDIA CENTER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DIONNE CHOYCE<br><br>Plaintiff,<br><br>v.<br><br>SF BAY AREA INDEPENDENT MEDIA CENTER, a.k.a. IMC, SF BAY AREA, a.k.a. SF BAY AREA IMC; an unincorporated association; LAYER42.NET, INC., a California Corporation, CERNIO TECHNOLOGY COOPERATIVE, an unincorporated association, and DOES 1-10,<br><br>Defendants. | Case No. CV-13-1842-JST<br><br>**SUPPLEMENTAL DECLARATION OF LEILA KNOX IN SUPPORT OF MOTION FOR AWARD OF ATTORNEY FEES PURSUANT TO 17 U.S.C. § 505** |

I, Leila Knox, declare:

1.      I am an attorney duly licensed to practice law in the State of California and in the U.S. District Court for the Northern District of California and am an associate with the law firm Bryan Cave LLP, attorneys for defendants SF Bay Area Independent Media Center ("Indybay").  I make this supplemental declaration of my own personal knowledge, including my knowledge of

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

the firm's files relating to this action. If called as a witness, I could and would testify competently to the facts stated herein.

2. The invoices included as Exhibits A-D to my original declaration in support of the motion for award of attorneys' fees pursuant to 17 U.S.C. § 505 reflect time spent only on the copyright portion of Indybay's motion to dismiss. For those entries reflecting time worked on both the copyright and defamation claims, I was conservative in my exercise of billing judgment and erred on the side of caution to ensure Indybay was not requesting fees for time spent on the defamation claim.

3. To illustrate the reasonableness of fees spent on the copyright portion of this motion, and by way of comparison, I reviewed billing records for this entire matter from the time counsel for Indybay began drafting its motion to dismiss and anti-SLAPP motion to strike through the hearing on the same (December 9, 2013 through March 27, 2014). While Indybay is only requesting fees in the amount of $26,002 for work done on the copyright portion of its motion to dismiss for this period of time (representing 56.3 hours of attorney and paralegal time), the total amount in fees incurred for both motions on both claims was more than $138,000 for the same time period (representing 316 hours of attorney and paralegal time). Therefore, the fees requested represent less than 20% of the overall fees incurred in connection with the two motions on the copyright and defamation claims.

4. The last sentence in Paragraph 10 of my declaration submitted with Indybay's opening brief on this motion contained one error. The last part of that sentence should read, "in connection with preparation for the hearing on the motion to dismiss." To clarify, Indybay is not requesting fees for time spent by partner Roger Myers in connection with preparation for the March 27 hearing on the motion to dismiss.

5. In preparation for the hearing on the motion to dismiss, I spent time reading the relevant cases, outlining my argument and conducting moot court with my colleagues (Indybay does not seek to recover fees for my colleagues' time conducting moot court). I also spent time researching arguments not specifically raised by Plaintiff in his briefing, such as the work-for-hire doctrine which, although touched upon in the parties' briefing, was not explicitly claimed by Plaintiff in his opposition to Indybay's motion to dismiss. In anticipation that he would raise such

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

1   issues at the hearing, I wanted to be prepared to orally respond.  The time Indybay requests does

2   not include an additional two hours of my time for attendance at the hearing itself.

3       6.      I have spent 14 hours ($6,020 in fees at $430 per hour) researching and drafting

4   portions of the reply brief, editing other portions of the reply brief and preparing this declaration;

5   partner Roger Myers spent three hours ($1,635 in fees at $545 per hour) reviewing and editing the

6   reply brief; associate Jessica Mar spent 15 hours ($5,325 in fees at $355 per hour) researching and

7   drafting portions of the reply brief, proofreading the brief and preparing an amended proposed

8   order; and paralegal Yvonne Herron spent three hours ($750 in fees at $250 per hour) cite

9   checking the reply brief and performing other tasks in preparation for the filing of this brief.  I

10  expect to spend another six hours – reflecting $2,580 in fees – preparing for, traveling to and from,

11  and appearing at the hearing on this motion.

12      7.      The fees for the reply papers and the hearing bring the total amount of fees and

13  costs sought on this motion to $59,836.11 ($42,702 in fees and $824.11 in costs through July 2,

14  2014, $13,730 in fees on the reply papers, and $2,580 in fees for the hearing).

15      I declare under penalty of perjury that the foregoing is true and correct.

16  DATED:  August 8, 2014

17                          _____
                                    /s/
                              Leila Knox

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

1　Roger Myers (CA State Bar No. 146164)
2　roger.myers@bryancave.com
　　Leila Knox (CA State Bar No. 245999)
3　leila.knox@bryancave.com
　　Jessica Mar (CA State Bar No. 293304)
4　jessica.mar@bryancave.com
　　**BRYAN CAVE LLP**
5　560 Mission Street, 25th Floor
　　San Francisco, CA  94105-2994
6　Telephone:   (415) 675-3400
　　Facsimile:    (415) 675-3434
7

8　Attorneys for Defendant
　　SF BAY AREA INDEPENDENT MEDIA CENTER
9

10　　　　　　　　UNITED STATES DISTRICT COURT

11　　　　　　　NORTHERN DISTRICT OF CALIFORNIA

12　　　　　　　　　SAN FRANCISCO DIVISION

13

| | |
|---|---|
| 14　DIONNE CHOYCE | CASE NO. CV-13-1842-JST |
| 15　　　　　　　Plaintiff, | **DECLARATION OF ROGER MYERS IN SUPPORT OF MOTION FOR AWARD OF ATTORNEY FEES PURSUANT TO 17 U.S.C. § 505** |
| 16　　　v. | |
| 17　SF BAY AREA INDEPENDENT MEDIA CENTER, a.k.a. IMC, SF BAY AREA, a.k.a. SF BAY AREA IMC; an unincorporated association; LAYER42.NET, INC., a California Corporation, CERNIO TECHNOLOGY COOPERATIVE, an unincorporated association, and DOES 1-10, | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22　　　　　　　Defendants. | |

23

24　　　　I, Roger Myers, declare:

25　　　　1.　　I am an attorney duly licensed to practice law in the State of California and in the

26　U.S. District Court for the Northern District of California and am a partner with the law firm

27　Bryan Cave LLP, attorneys for defendant SF Bay Area Independent Media Center ("Indybay").  I

make this declaration of my own personal knowledge, including my knowledge of the firm's files

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA  94105-2994

relating to this action. If called as a witness, I could and would testify competently to the facts stated herein.

2. After obtaining a B.A. in Journalism with great distinction from San Jose State University in 1980, I spent five years as a newspaper reporter and editor before entering Boalt Hall School of Law at U.C. Berkeley, from which I graduated Order of the Coif in 1988. Following law school, I was a law clerk to the Hon. James R. Browning, United States Court of Appeals for the Ninth Circuit in San Francisco, from 1988-89. I was admitted to practice law in California in 1990 and, since then, have focused my practice on representing media clients on intellectual property and similar claims. For several years running, I have been named a Super Lawyer in Media Law and one of the Leading Lawyers in media law by Chambers & Partners. In 2005, I received the American Bar Association International Human Rights Award for establishing a Media Support Center to help protect media from repression in Kazakhstan, and in 1998 received the James Madison Freedom of Information Award for legal counsel from the Society of Professional Journalists (Northern California Chapter). Prior to its merger with Bryan Cave LLP at the beginning of 2012, I was co-chair of Holme Roberts & Owen LLP's Intellectual Property, Technology, and Media practice group. I have also served as an adjunct professor in media law and ethics at San Jose State.

3. I have extensive experience defending publishers and authors against copyright and pendant state law claims and have successfully defended numerous copyright infringement lawsuits against media clients, including *Identity Arts v. Best Buy Enter. Serv., Inc*., 2007 U.S. Dist. LEXIS 32060 (N.D. Cal. April 18, 2007) (granting motion for judgment on the pleadings for lack of substantial similarity); *Morgenstein v. ABC, Inc.*, 27 Media L. Rep. 1350, 1998 U.S. Dist. LEXIS 14994 (N.D. Cal. Sept. 11, 1998) (granting motion to dismiss on fair use grounds); and *Shepard v. Miler*, January 12, 2012 Order, No. Civ. 2:10-1863 WBS JFM (E.D. Cal. 2012).

4. My current hourly rate is $545, and in 2013 was $525. This is lower than what attorneys with comparable experience often charge, especially in intellectual property litigation. For example, in *Rosenfeld v. U.S. Dept. of Justice*, 904 F. Supp. 2d 988 (N.D. Cal. 2012), Judge

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

1    Chen determined that a California attorney with 21 years of experience would command between

2    $495 and $785 per hour, and an attorney with 28 years of experience would command an hourly

3    billed rate between $640 and $875 per hour. *Id.* at 1002. Judge Chen found that $550 per hour

4    was reasonable for David Greene, who at the time was my colleague at Bryan Cave and a counsel

5    at the firm with 21 years of experience. *Id.* Nearly two years have passed since Judge Chen's

6    order was issued, and not only is the fee that I am requesting less than what the court approved for

7    Mr. Greene at the time, but I have practice law now for 24 years – three more years of experience

8    than Mr. Greene had at the time of that decision. *Id.*

9        I declare under penalty of perjury that the foregoing is true and correct.

10   DATED: July 2, 2014

11   
     Roger Myers

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

SF01DOCS\205411.1

DECL. OF ROGER MYERS IN SUPPORT OF MOT. FOR AWARD OF ATTY FEES        CASE NO. CV-13-1842-JST

**Pages 1 - 16**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jon S. Tigar, Judge

```
DIONNE CHOYCE,                    )
                                  )
            Plaintiff,            )
                                  )
    VS.                           )    NO. C 13-01842 JST
                                  )
SF BAY AREA INDEPENDENT MEDIA     )
CENTER, et al.,                   )
                                  )
            Defendants.           )
_____  )
```

San Francisco, California
Thursday, March 27, 2014

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:

        SMITH PATTEN
        353 Sacramento Street, Suite 1120
        San Francisco, California 94111
        **BY: SPENCER F. SMITH, ESQ.**
        **DOW WAKEFIELD PATTEN, ESQ.**

For Defendant SF Bay Area Independent Media Center:
        BRYAN CAVE LLP
        560 Mission Street, 25th Floor
        San Francisco, California 94105-2994
        **BY: LEILA KNOX, ESQ.**
        **ROGER REX MYERS, ESQ.**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported by:     James C. Pence, RMR, CRR, CSR No. 13059
                Official Court Reporter

1   **APPEARANCES**:  (CONTINUED)

2   For Defendant SF Bay Area Independent Media Center:
                        BRYAN CAVE LLP

3                         3161 Michelson Drive, Suite 1500
                        Irvine, California 92612

4                 **BY:**  **KATHERINE M. HARRISON, ESQ.**

5   For Defendant Layer42.net, Inc.:
                        CASAS RILEY & SIMONIAN, LLP

6                         One First Street, Suite 2
                        Los Altos, California 94022

7                 **BY:**  **MEGGAN CASAS, ESQ.**
                      **ANTHONY F. BASILE, ESQ.**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | **Thursday - March 27, 2014**        **3:23 p.m.** |

1  **Thursday - March 27, 2014**                           **3:23 p.m.**

2                    **P R O C E E D I N G S**

3                         ---o0o---

4       **THE CLERK:**  Calling Civil Case 13-1842, Dionne Choyce

5  versus SF Bay Area Independent Media Center, et al.

6       Counsel, will you please step forward and make your

7  appearances.

8       **MS. KNOX:**  Leila Knox for defendant SF Bay Area

9  Independent Media Center.  I've also got Katherine Harrison

10  with me, who will be arguing on -- the motions on the

11  defamation cause of action, and Roger Myers.

12       **MR. MYERS:**  Roger Myers, Your Honor, also for SF Bay

13  Area Independent Media Center.  Good afternoon, Your Honor.

14       **THE COURT:**  Nice to see you.

15       **MR. MYERS:**  You, too, Your Honor.

16       **MS. CASAS:**  Good afternoon, Your Honor.  Meggan Casas

17  on behalf of defendant Layer42.  I'm here with my colleague

18  Anthony Basile.

19       **THE COURT:**  Welcome.

20       **MR. SMITH:**  Good afternoon, Your Honor.  Spencer Smith

21  and Dow Patten on behalf of plaintiff.

22       **THE COURT:**  Gentlemen, welcome.

23       Well, it doesn't matter to the Court who argues first.  My

24  time is not unlimited, though, and so -- I don't like to give

25  people time limits.  I do have another case to handle when I'm

1  done with your case.

2      Why don't I hear first from -- from SF Bay Area

3  Independent Media Center.

4          MS. KNOX:  All right.  Before turning things over to

5  Ms. Harrison, I'm just going to make a few brief comments on

6  the copyright claim and the motion to dismiss.

7      So the bottom line here is that the copyright claim must

8  be dismissed without leave to amend not only because plaintiff

9  didn't allege registration, as the Court had previously

10  ordered, but also plaintiff has not alleged ownership of the

11  copyright claim.  This is a threshold requirement for bringing

12  a copyright lawsuit, and plaintiff hasn't indicated that he can

13  meet this threshold requirement.

14      Unless the Court has any questions, I'll turn things over

15  to Ms. Harrison to --

16          THE COURT:  No.  I think I understand your argument.

17  This is a professional photographer.  It's not a selfie.

18          MS. KNOX:  No, it's not a selfie.

19          THE COURT:  So there's not -- there's not -- I

20  understand the argument.

21          MS. KNOX:  Okay.

22          THE COURT:  Yeah.

23          MS. KNOX:  Well, thank you, Your Honor.

24          THE COURT:  Thank you.

25          MS. HARRISON:  Good afternoon, Your Honor.

1          **THE COURT:**  Good afternoon.

2          **MS. HARRISON:**  I wanted to address a few issues on the

3   defamation claim.

4          **THE COURT:**  Do me a favor and the court reporter also

5   and just say your name.

6          **MS. HARRISON:**  Katherine Harrison.

7          **THE COURT:**  Thank you, Ms. Harrison.

8          **MS. HARRISON:**  So the first point I wanted to address

9   was the jurisdiction issue should the Court decide to dismiss

10  the copyright claim.  We would urge the Court to retain

11  jurisdiction to get to the defamation issue on the motion to

12  dismiss.  As I'm sure the Court is well aware -- aware, there

13  are several factors to consider when determining whether to

14  retain jurisdiction over a state law cause of action, including

15  judicial economy, convenience, and fairness.

16      Another factor to consider in this case is that this is a

17  First Amendment issue, and the Supreme Court consistently

18  recognizes the sensitivity of First Amendment concerns and to

19  the thread of harassing litigation.  So in this instance --

20         **THE COURT:**  Federal Courts don't enjoy any specialized

21  expertise in the area of First Amendment, do they?

22         **MS. HARRISON:**  Well, in this instance, Indybay is

23  immune under the Communications Decency Act, which is a federal

24  statute.

25         **THE COURT:**  Yes.

1    **MS. HARRISON:**  And so that combined with the fact that

2  these issues have been briefed before the Court, it would be --

3  it would -- there would be less of a burden on -- on the Court

4  as well as the parties to keep it here.  That way, there's no

5  risk of, if it goes back to state court, additional costs or

6  uncertainty of litigation, given that we've already briefed it

7  here.

8    **THE COURT:**  What makes it more uncertain?

9    **MS. HARRISON:**  Well, there's a -- there's uncertainty

10  in any litigation.  So to -- to -- to increase the amount of

11  time that this -- that this case is underway involves an

12  increased risk to the parties.

13    **THE COURT:**  Thank you.

14    **MS. HARRISON:**  Thank you.

15    I also wanted to address the anti-SLAPP motion, but I

16  don't know if Your Honor wants to address the motion to dismiss

17  first.

18    **THE COURT:**  No.  No.  Please --

19    **MS. HARRISON:**  Okay.

20    **THE COURT:**  -- keep making your argument.

21    **MS. HARRISON:**  Okay.  So the other issue -- the other

22  issue that seems to be the focus here is whether the Court --

23  whether the mention of eviction in the second -- in the second

24  article is -- is -- can -- is an issue of public interest and

25  whether this Court can determine this issue on the anti-SLAPP

```
 1   motion.

 2        Under Doe and Taus and several other cases, they hold that

 3   the anti-SLAPP statute applies when the general course of

 4   conduct or the broad topic of the activity at issue is a matter

 5   of public interest.

 6        So here, plaintiff himself demonstrates that the eviction

 7   issue is part of the broad topic of plaintiff's ethics and

 8   integrity.  For example, in Paragraph -- he submitted a

 9   proposed second amended complaint.  In Paragraph 65, he

10   states -- I can quote.  He states that the -- the article

11   expressly states plaintiff was dishonest and unethical because

12   he faced criminal charges, embezzled from the homeless, and had

13   been evicted from his office.

14        THE COURT:  Are these -- this is the allegation

15   against the Doe defendants?

16        MS. HARRISON:  This is the allegation -- yes, Your

17   Honor, but we would urge the Court to look at this as a

18   characterization of the topic as a whole, and it -- the article

19   itself discusses the --

20        THE COURT:  Do you as a person think it's true?

21   Isn't --

22        MS. HARRISON:  True that this is --

23        THE COURT:  Doesn't the cynic in you think that's

24   their way of trying to deal with an anti-SLAPP problem they

25   have in this case and that's all that is; in other words,
```

1  having -- separating out the eviction in one claim and then

2  lumping it together with other things in a claim against Doe

3  defendants?

4          **MS. HARRISON:**  Yes.

5          **THE COURT:**  Isn't that what you think?

6          **MS. HARRISON:**  Yes, Your Honor.

7      And so -- and so we do -- given the fact that the eviction

8  issue is so intertwined in the discussion of the plaintiff's

9  overall integrity, we would -- we would state that the eviction

10  issue is part of the general topic of the article.

11          **THE COURT:**  Did this -- I apologize for the need to

12  ask this question.  Was the hearing on this motion originally

13  vacated and restored to calendar?

14          **MS. HARRISON:**  Yes.

15          **THE COURT:**  Was it so that you could argue here?

16          **MS. HARRISON:**  Yes, Your Honor.

17          **THE COURT:**  Welcome to this court.

18          **MS. HARRISON:**  Thank you.

19          **THE COURT:**  I'm very -- I cannot tell you how much

20  pleasure it gives me to have this policy, and so welcome to

21  this court and to the practice of law in Federal Courts.

22          **MS. HARRISON:**  Thank you, Your Honor.  I appreciate

23  this Court's policy as well.

24          **THE COURT:**  Now I'm going to go back to asking you

25  mean questions, but go ahead and make your argument.

1      **MS. HARRISON:**  Okay.  So -- so should this Court

2 decide that -- that the eviction issue is part of the broad

3 topic -- that is, a public interest -- and move to the second

4 prong -- this is also true on the -- on the motion to

5 dismiss -- Indybay is immune under the CDA, and plaintiff has

6 not alleged facts to indicate otherwise.

7      **THE COURT:**  Very good.

8 Thank you.

9      **MS. HARRISON:**  Thank you, Your Honor.

10      **THE COURT:**  I'm trying to think what makes more sense,

11 probably to hear from the plaintiff twice.

12      **MR. SMITH:**  Thank you, Your Honor.

13      **THE COURT:**  We'll do one motion at a time.

14      **MR. SMITH:**  And thank you, Ms. Harrison, for those

15 points.

16    Your Honor, Ms. Harrison started off and I'll start with

17 the anti-SLAPP issue.

18      **THE COURT:**  I would start with the copyright.

19      **MR. SMITH:**  Your Honor, I think it's a very simple

20 issue to deal with.  It's not a selfie.  It is a professional

21 photograph.  It's work-for-hire.  It's a picture that the

22 plaintiff owns.  We can amend the complaint and put those

23 statements in there regarding ownership.

24    The only issue left here, Your Honor, is equitable relief.

25 There are no damages for the copyright based on Your Honor's --

1       **THE COURT:**  What are the damages?

2       **MR. SMITH:**  Your Honor --

3       **THE COURT:**  Just out of curiosity, what are the

4   damages for the copyright infringement in this case?

5       **MR. SMITH:**  Your Honor's last order limited damages to

6   equitable relief only.  So there are no damages -- monetary

7   damages left on the copyright claim.

8       **THE COURT:**  Give me just one second.  Sorry to

9   interrupt you.  I'm just looking at my notes on this copyright

10  claim.

11      Doesn't your Certificate of Registration -- I beg your

12  pardon.  Doesn't the plaintiff's Certificate of Registration

13  bear his name as the only author of the work rather than

14  listing the photographer as the author and himself as the

15  current owner of the registration?

16      **MR. SMITH:**  That is correct, Your Honor.

17      **THE COURT:**  And the registration certificate also does

18  not indicate that the mark was made as a work-for-hire; right?

19      **MR. SMITH:**  That is correct, Your Honor.

20      **THE COURT:**  And a valid copyright application has to

21  contain in the case of a work made for hire a statement to that

22  effect pursuant to 17, United States Code, Section 409, Subpart

23  (4).

24      So what's the plaintiff going to do about those problems?

25  He can change the complaint, but what's he going to do about

1    all that?

2          **MR. SMITH:**  Your Honor, we'll have to return to the

3    Copyright Office and amend to correct those mistakes.

4          **THE COURT:**  Okay.

5          **MR. SMITH:**  Your Honor, the real reason -- you know,

6    the more important issues here are the defamation claims.  And

7    Ms. Harrison spoke about the policy considerations behind

8    anti-SLAPP, and that's to avoid harassing complaints against

9    defendants for exercising a First Amendment speech.  Here,

10   what's troublesome about this case is that the plaintiff went

11   through extensive efforts with both defendants to try to avoid

12   being here in this lawsuit.

13       Your Honor, on September 20th, 2012, October 2nd, 2012,

14   and February 22nd, 2013, the plaintiff attempted to have

15   Layer42 take the offending statements and pictures down.  They

16   would not respond.  It wasn't until we filed the lawsuit on

17   April 23rd, 2013, that finally the offending materials were

18   taken off.

19       When we go on to Indybay, Indybay runs from the plaintiff,

20   avoids service, says, "We have never been served."  They show

21   up after Your Honor rules that the anti-SLAPP --

22         **THE COURT:**  How does --

23         **MR. SMITH:**  Your Honor --

24         **THE COURT:**  So maybe -- maybe they wish they hadn't

25   done that, but how does that help me decide this motion?

1      **MR. SMITH:** Your Honor -- so my point is now when we

2  get to these issues, why are we here? We're here because of

3  the defendants' unwillingness to cooperate with the plaintiff.

4  The defendants have not told us in any of their opposition --

5  opposing papers who is the author. All we have both defendants

6  saying is "We don't" -- "we can't control the content, yet we

7  can control the content. We didn't create this particular

8  content. We can control the content."

9      Now, on a 12(b)(6) motion, Your Honor, when we start to go

10  outside of the pleadings, the four corners of the pleadings, we

11  have to convert the motion to a summary judgment motion. And

12  what we have here is we have -- now we have a new defendant

13  coming in saying, "We can control the content on the website.

14  We just didn't create this offending content."

15      **THE COURT:** All right.

16      **MR. SMITH:** That cannot be -- that cannot be a basis

17  for granting a 12(b)(6) motion because it goes outside of the

18  four corners of the pleadings.

19      Now, Your Honor, the issues of immunity, Section 230. You

20  dealt with this last time in your last ruling. You gave the

21  basis for why Layer42 would not have immunity. I would say the

22  same applies to Indybay. I don't think there's -- these issues

23  have already been decided.

24      The real issue, Your Honor, is what -- the difficulty of

25  this case is and the reason why I prefaced it with the

1    difficulty -- the difficulty the plaintiff has had with getting

2    the defendants to cooperate with this matter was it could have

3    been avoided with communication.  This lawsuit did not have to

4    be filed if either one of these defendants would have took the

5    offending comments and picture down, cooperated with us.

6    Instead, we get no cooperation from Layer42 --

7              THE COURT:  I don't think -- again, I don't -- I

8    understand that this is very frustrating to the plaintiff.  I

9    don't think that helps me decide --

10             MR. SMITH:  And so --

11             THE COURT:  -- a motion.  I very frequently have

12   plaintiffs' lawyers come in here and argue, "If the defendant

13   hadn't done this terrible thing, we wouldn't be here."

14        I'd say, "Well, you wouldn't be here, either.  None of us

15   would have a job."  This is litigation.

16             MR. SMITH:  I understand, Your Honor.

17             THE COURT:  So of course you're not happy with

18   anything they did.

19             MR. SMITH:  Your Honor -- so now we get to the issue

20   of -- which you pointed out, Your Honor -- is now how do you

21   plead a complaint when you have two defendants, one admitting

22   they have control over the content of the website, another

23   taking steps to take the content down off the website?  Again,

24   at this early stage in the litigation, we've had no discovery.

25   We don't know if these statements are true or how the content

1    was taken down.  How do you plead this?

2         Well, Your Honor, out of an abundance of caution, you'll

3    see that now we have to plead the defamation claim against the

4    Doe defendant, who is the author of this content, who -- we may

5    find out in discovery who it is.  We may never find out who it

6    is.

7         **THE COURT:**  I'm not sure it's relevant to any order or

8    issue, but why is it that the eviction allegations are lumped

9    in against the Doe defendants and not against other defendants?

10        **MR. SMITH:**  Your Honor, out of an abundance of

11   caution, reading Your Honor's ruling of -- the last ruling, the

12   issue of separating the claims out and one being a matter of

13   public interest and one being a matter not of public

14   interest -- but the matter that was not a public interest,

15   which is the eviction, was based on issues related to the

16   embezzlement.  Again, out of an abundance of caution, we

17   wanted --

18        **THE COURT:**  I'm not asking you to agree with the

19   Court's prior ruling, but isn't it inevitable that if the Doe

20   defendants, whoever they are, are named and served, that the

21   first thing they will do is read the Court's prior orders on

22   the docket and file an anti-SLAPP motion with regard to the

23   noneviction allegations and cite my own prior order and acumen?

24        **MR. SMITH:**  No.  I don't think they will be able to

25   prevail on the second prong of the anti-SLAPP statute, and they

1  won't have -- they won't have a protection because they won't

2  be able to prove that they can prevail.

3      **THE COURT:** Ah.  Okay.

4      **MR. SMITH:** And so that's why we've pled it this way.

5      Your Honor, I can tell you if we are allowed to amend, we

6  are going to allow -- we are going to add additional causes of

7  action against the named defendants which will capture the

8  conduct, which are negligence causes of action as well as

9  intentional infliction of emotional distress, negligent

10  intentional -- negligent infliction of emotional distress for

11  the conduct, what we do know that they've -- they've admitted

12  that they have engaged in so far through their declarations.

13      **THE COURT:** All right.  Thank you.

14      **MR. SMITH:** Thank you, Your Honor.

15      **THE COURT:** Layer42?

16      **MS. CASAS:** Good afternoon, Your Honor.  Meggan Casas

17  for Layer42.

18      **THE COURT:** Ms. Casas.

19      **MS. CASAS:** I really don't have anything much more to

20  add to the conversation at this point.  Unless Your Honor has

21  any specific questions for me, I'll defer to our codefendant.

22      **THE COURT:** All right.  Thank you.

23      I don't usually talk at a motion hearing about anything

24  except the motion hearing.  I'm not asking anybody to do

25  anything.

1          I do wonder -- no offense to Indybay -- who reads Indybay?

2     What are the claimed damages in this case?  Don't answer that

3     question out loud.  What are the damages?  How much litigation

4     are we going to have?  It's an interesting case.  If it wasn't

5     this case, it would be some other case.  It's not my workload

6     I'm talking about.  I just wonder seriously in this case.

7          Anyway, Mr. Smith, thank you for your argument.  This

8     motion is now under submission.

9          Thank you.

10          **MR. SMITH:**  Thank you, Your Honor.

11               (Proceedings adjourned at 3:40 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### CERTIFICATE OF REPORTER

    I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:  Friday, September 4, 2015


_____

James C. Pence, RMR, CRR, CSR No. 13059
U.S. Court Reporter

SMITH PATTEN
SPENCER SMITH, ESQ. (SBN:236587)
DOW W. PATTEN, ESQ. (SBN: 135931)
353 Sacramento St., Suite 1120
San Francisco, California 94111
Telephone (415) 402-0084
Facsimile (415) 520-0104

Attorneys for
DIONNE CHOYCE

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

DIONNE CHOYCE, an individual

Plaintiff,

vs.

SF BAY AREA INDEPENDENT MEDIA
CENTER, a.k.a. IMC, SF BAY AREA, a.k.a.
SF BAY AREA IMC; an unincorporated
association; LAYER42.NET, INC., a
California Corporation. CERNIO
TECHNOLOGY COOPERATIVE, an
unincorporated association, and DOES 1-10,

Defendants.

CASE NO. 3:13-cv-01842-JST

**PLAINTIFF'S OPPOSITION TO
DEFENDANT SF BAY AREA
INDEPENDENT MEDIA CENTER
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT
PURSUANT TO FEDERAL RULE OF
CIVIL PROCEDURE 12(B)(6) AND TO
SPECIALLY STRIKE PLAINTIFF'S
STATE LAW CAUSES OF ACTION
PURSUANT TO CALIFORNIA CODE OF
CIVIL PROCEDURE 425.16 AND
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF SAME**

Date:      February 13, 2014
Time:      2:00 p.m.
Location:  Courtroom 9, 19th Floor, 350
           Golden Gate Ave., San Francisco,
           CA

## **TABLE OF CONTENTS**

I.    INTRODUCTION..................................................................................................1

II.   RELEVANT PROCEDURAL BACKGROUND................................................3

III.  LAW AND ARGUMENT..................................................................... 4

    A.    Standard For Dismissal Under Rule 12(B)(6)......................................4

    B.    Plaintiff's Copyright Claim is Sufficiently Plead, and an Amendment Would Not Be Futile.....................................................................................5

    C.    Defendant Indybay Fails To Qualify For Immunity Under Section 230 Of The Communications Decency Act..............................................................6

    D.    California's Anti-SLAPP Statute Does Not Apply To Plaintiff's Second Claim Alleged Against Defendant Indybay..............................................8

IV.  CONCLUSION..................................................................................11

i

# **TABLE OF AUTHORITIES**

*Aalmuhammed v. Lee*,
202 F.3d 1227 (9th Cir. 2000)........................................................................5

*Aeroplate Corp. v. Arch Ins. Co.*,
2006 U.S. Dist. LEXIS 82180, 2006 WL 3257487, at *5 (E.D. Cal. Nov. 8, 2006)....................11

*Aik Cheong Neo v. Marina Bros., Inc.*,
2009 U.S. Dist. LEXIS 69475 (N.D. Cal. 2009)....................................................6

*Ashcroft v. Iqbal*,
129 S.Ct. 1949 (2009)...............................................................................4

*Barrett v. Rosenthal*,
40 Cal. 4Th 33 (Cal. 2006)........................................................................7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................4

*Broam v. Bogan*,
320 F.3d 1023 (9th Cir. 2003)......................................................................4

*Burrow-Giles Lithographic Co. v. Sarony*,
111 U.S. 53 (1884).................................................................................5

*Clark v. Mazgani*,
170 Cal. App. 4th 1281 Cal. Rptr. 3D 24 (2009)...................................................10

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey*,
920 F.2d 1496 (9th Cir. 1990)......................................................................4

*Doe v. Gangland Prods.*,
730 F.3d 946 (9th Cir. 2013)........................................................................9

*Fair Housing Council of San Fernando Valley v. Roommates.com,
LLC*, 521 F.3d 1157 (9th Cir. 2008)................................................................6

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 L. Ed. 2D 358 (1991)................................................................5

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
63 F. Supp. 2d 1127 (N.D. Cal. 1999)..............................................................8

*Hospital Bldg. Co. v. Rex Hospital Trustees*,
425 U.S. 738 (1976)................................................................................4

ii

*Jenkins v. McKeithen*,
395 U.S. 411 (1969)..................................................................................4

*Jones v. Neven,*
399 Fed. Appx. 203 (9th Cir. 2010)..........................................................4

*Lafayette Morehouse, Inc. v. Chronicle Pub. Co,*
37 Cal. App. 4Th 855 (1995)....................................................................10

*Lanthrop v. Donohue*,
367 U.S. 820 (1961)..................................................................................9

*Program Eng'g, Inc. v. Triangle Publ'ns, Inc.,*
634 F.2d 1188, 1193 (9th Cir. 1980)........................................................4

*Rogers v. Home Shopping Network, Inc.*,
57 F. Supp. 2d 973 (C.D. Cal. 1999).......................................................1

*Santa Monica Rent Control Bd. v. Pearl Street,*
*LLC* (2003) 109 Cal.App.4th................................................................10

*Silvers v. Sony Pictures Entm't, Inc.*,
402 F.3d 881 (9th Cir. 2005)....................................................................5

## FEDERAL STATUTES

F.R.C.P. 12(b)(6)...............................................................................1,4,11

F.R.C.P. 15(a...........................................................................................6

F.R.C.P. 56(D)..........................................................................................4

Fed. R. Evid. 602..................................................................................1,2

Fed. R. Evid. 401, 402...........................................................................1,2

Fed. R. Evid. 801, 802...............................................................................3

Fed. R. Evid. 1001, 1002.......................................................................1,2

U.S.C § 510(b).........................................................................................5

17 U.S.C. § 410(c)....................................................................................6

47 U.S.C. § 230(c)(1)..............................................................................6,7

## STATE STATUTES

Code of Civil Procedure §§ 1161-1179....................................................10

Code Civ. Proc., § 425.16....................................................................10,11

1    Plaintiff, DIONNE CHOYCE, ("Plaintiff Choyce" or "Plaintiff") through his counsel of

2    record herein, hereby Opposes Defendant SF Bay Area Independent Media Center's ("Defendant

3    Indybay" or "Indybay") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

4    and Special Motion to Strike. For the reasons set forth below, the Court should grant Plaintiff

5    leave to amend to cure the deficiencies alleged in the First Amended Complaint and should deny

6    Defendant Indybay's Special Motion to Strike (Anti-SLAPP).

## I.    INTRODUCTION

8    Plaintiff Choyce has been a successful attorney in the state of California since 2001. (Dkt

9    # 26, First Amended Complaint ("FAC"), ¶ 12.) In approximately May of 2012, he became

10   aware of defamatory statements about him on the web site "indbay.org" when a potential client

11   inquired about false information on the indybay.org website. (Dkt # 11, Choyce Decl., ¶ 3.)  In

12   order to respond to the defamation and misappropriation of his image, Plaintiff Choyce used the

13   means at his disposal to investigate and have the defamatory content taken down.  Specifically,

14   using the email address for the "site administrator" of indybay.org Plaintiff requested that the

15   false information be removed from the website. (*Id*.) Plaintiff Choyce never received a response

16   from Indybay to his request. (*Id*.)  After engaging attorneys to issue takedown demands to no

17   avail, and a lawsuit, the information was eventually removed by Defendant Layer 42.

18   Defendant Indybay is a self-described "collective" which in addition to publishing, edits

19   posts on its website. (Dkt # 31, Def. Indybay Motion to Dismiss ("MTD"), p. 3:5-7.)   Exercising

20   that control of this nature over content on the indybay.org domain, Indybay eventually removed

21   Plaintiff's copyrighted portrait located on at least two separate pages after Plaintiff engaged

22   counsel and filed suit. (*Id.* at 11.) Defendant Indybay further admits that it was told by Cernio

23   Technology Cooperative that co-defendant Layer 42 had received a Digital Millennium

24   Copyright Act take-down demand from Plaintiff. (Morse Decl., ¶11.)[1]

25   _____

     1   Plaintiff objects to the Declaration of David Morse ("Morse") in its entirety as it lacks
26       foundation (Fed. R. Evid. 602) and Personal Knowledge (Fed. R. Evid. 401, 402) as ¶ 1 fails
         to allege his role in the "collective", how the declarant came to know the facts set forth in the
27       declaration, if he has any authority to speak on behalf of the "collective" and it is vague and
         ambiguous as to being a "member of a collective."
28       Morse ¶ 2: Best Evidence Rule (Fed. R. Evid. 1001, 1002) to the extent that the statements
         attempt to testify as to the content of the contract which is took over from Cernio Technology

1

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS                    3:13-cv-01842-JST

SER 074

1  However, absent from Indybay's moving papers, is any agreement between itself and the

2  other named Defendants, how it exercises the control of its editorial cooperative-within-a-

3  cooperative, any user agreement or any alleged "Publish to Indybay" form for the posts at issue

4  which would identify the DOE Defendants in this matter.

5  Faced with this intentional obscurity and lack of attribution, the FAC, and proposed

6  Second Amended Complaint all allege that the named Defendants along with DOE Defendants

7  1-10, conduct business by conspiring to shield each other from any liability by obfuscating the

8  _____
Cooperative.

9  Morse ¶ 3:Vague and ambiguous, lacks foundation, (Fed. R. Evid.602) and lacks personal knowledge (Fed. R. Evid. 401, 402) as to the statement "most of the content on the Indybay

10  website is contributed by third-party users."

Morse ¶ 6: Lacks foundation (Fed. R. Evid. 602), lacks personal knowledge (Fed. R. Evid.

11  401, 402) and is an improper self-serving statement as to "Indybay does not solicit or encourage any particular type of content." Best Evidence Rule (Fed. R. Evid. 1001, 1002) to

12  the extent that the statements attempt to testify as to the content of a user agreement and/or policies and procedures for users.

13  Morse ¶ 7: Vague and ambiguous, lacks foundation, (Fed. R. Evid.602) and lacks personal

14  knowledge (Fed. R. Evid. 401, 402) as to the phrase "editorial collective" as there is nothing to ascertain what distinguishes this collective from the previously mentioned collectives in

15  paragraphs 2 and 5. Best Evidence Rule (Fed. R. Evid. 1001, 1002) to the extent that the statements attempt to testify as to the content of its policies and procedures and or guidelines

16  for the "editorial collective."

Morse ¶ 8: Vague and ambiguous, lacks foundation, (Fed. R. Evid.602) and lacks personal

17  knowledge (Fed. R. Evid. 401, 402) as to the phrases "collective" and "lacks resources to

18  investigate disputes of fact." Best Evidence Rule (Fed. R. Evid. 1001, 1002) to the extent that the statements attempt to testify as to the content of its policies and procedures and or

19  guidelines for the "collective."

Morse ¶ 9: Vague and ambiguous, lacks foundation, (Fed. R. Evid.602) and lacks personal

20  knowledge (Fed. R. Evid. 401, 402) as to the entire paragraph. Best Evidence Rule (Fed. R.

21  Evid. 1001, 1002) to the extent that the statements attempt to testify as to who authored the posts without providing the "Publish to Indybay" form, if any, connected to these posts.

22  Morse ¶ 10: Vague and ambiguous, lacks foundation, (Fed. R. Evid.602) and lacks personal

23  knowledge (Fed. R. Evid. 401, 402) as to the statement that "none of the members of the editorial collective made any changes" to the April and May 2012 posts. Morse fails to

24  identify how he ascertained this information. Best Evidence Rule (Fed. R. Evid. 1001, 1002)

25  to the extent that the statements attempt to testify as to who authored the posts without providing the "Publish to Indybay" form, if any, connected to these posts.

26  Morse ¶ 11: Inadmissible Hearsay (Fed. R. Evid. 801, 802); lacks foundation, (Fed. R.

Evid.602) and lacks personal knowledge (Fed. R. Evid. 401, 402) as to the statement

27  "Indybay was told by Cernio Technology Cooperative that co-defendant Layer42 had received a Digital Millennium Copyright Act take-down demand from Plaintiff." Lacks Foundation

28  (Fed. R. Evid 602) as to the the statement "Indybay promptly removed the photo from both posts."

2

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS                    3:13-cv-01842-JST

1  relationship between the Defendants and the identities of the persons infringing copyright and

2  engaging in defamation.  Accordingly, Plaintiff has alleged plausible claims for relief, Defendant

3  cannot establish §230 immunity from suit, and the motion must be denied.

4  **II.  RELEVANT PROCEDURAL BACKGROUND**

5        Plaintiff brought the instant action against Defendants, Indybay, Layer 42, Cernio

6  Technology Cooperative ("Cernio") and Does 1-10, on April 23, 2013. (Dkt # 1.) On October 23,

7  2013,  U.S. Copyright Office registered Plaintiff's copyright for the work entitled "Dionne

8  Choyce Portrait." (Dkt # 17.) On October 31, 2013, Plaintiff's process server hand served

9  Defendant Indybay at the address listed in the "Donate" form on the indybay.org website. (Patten

10  Decl., ¶ 2.) The Complaint was also mailed through a third party processes server on November

11  5, 2013. (Patten Decl., ¶ 2.)

12        On December 2, 2013, the Court issued an order granting Plaintiff leave to amend the

13  operative complaint with respect to Plaintiff's claims for Copyright Infringement and Defamation

14  against Defendant Layer 42. (Dkt # 22.) Defendant Indybay's counsel, after reviewing the Court's

15  December 2, 2013 order, informed Plaintiff that if Plaintiff moved forward with the suit against

16  Indybay, then Indybay, like Layer 42, would file an anti-SLAPP suit. (Patten Decl., ¶ 3.)

17  Plaintiff's counsel responded by informing Indybay that Plaintiff was more than willing to meet

18  and confer with Indybay regarding its defenses and that Plaintiff did not wish to pursue any

19  claims against any party who was not responsible for defaming Plaintiff. (*Id.*) Plaintiff's counsel

20  informed Defendant Indybay's counsel that if it had information that would suggest that Indybay

21  was not a collective, that the authors of the defamatory articles are not part of the collective, and

22  who at Indybay reviewed Plaintiff's numerous requests to have the posts taken down then

23  Plaintiff would review the information and meet and confer concerning the narrowing of issues

24  and the identification of Doe Defendants in this matter. (*Id.*)

25

26

27      Morse ¶ 12: Inadmissible Hearsay (Fed. R. Evid. 801, 802) as to the statement regarding

28  threats by Layer42 further there is no time specified by the Morse declaration in connection to
these statements.

3

1    Plaintiff received no response to this last letter, instead, after Plaintiff agreed not to

2    oppose Defendant Indybay's request for an extension of time to answer, on January 9, 2014,

3    Indybay filed its motion to dismiss and special motion to strike.

4    **III.    LAW AND ARGUMENT**

5          **A.    Standard for Dismissal Under Rule 12(b)(6).**

6          "In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

7    the court examines whether a complaint "contain[s] sufficient factual matter, accepted as true, 'to

8    state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)

9    (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). In applying

10   this plausibility standard, the pleading must be construed in the light most favorable to the party

11   opposing the motion, resolving all doubts in the pleader's favor. *Hospital Bldg. Co. v. Rex

12   Hospital Trustees*, 425 U.S. 738, 740, 96 S. Ct. 1848 (1976); *Jenkins v. McKeithen*, 395 U.S. 411,

13   421, 89 S. Ct. 1843 (1969); *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003)

14         If matters outside the pleadings are submitted and considered by the court, the motion to

15   dismiss under Rule 12(b)(6) is treated as one for summary judgment under Rule 56. *See*

16   Fed.R.Civ.P. 12(b); *Del Monte Dunes at Monterey, Ltd. v. City of Monterey,* 920 F.2d 1496, 1507-

17   08 (9th Cir. 1990).

18         Defendant Indybay submitted, in conjunction with its 12(b)(6) motion to dismiss, the

19   declaration of David Morse, which goes well beyond the four corners of the complaint, and a

20   Request for Judicial Notice which attaches a nine page document for consideration by the Court.

21   If the Court considers these matters, which are outside of the pleadings, the motion is converted

22   to a Motion for Summary Judgment and determination on the pleadings must be stayed until

23   Plaintiff has had the opportunity to conduct discovery necessary to oppose summary judgment

24   pursuant to Federal Rule of Civil Procedure 56(d). *see Jones v. Neven*, 399 Fed. Appx. 203, 204-

25   205 (9th Cir. 2010); *Program Eng'g, Inc. v. Triangle Publ'ns, Inc.*, 634 F.2d 1188, 1193 (9th Cir.

26   1980) ("Generally  where a party has had no previous opportunity to develop evidence and the

27   evidence is crucial to material issues in the case, discovery should be allowed before the trial

28   court rules on a motion for summary judgment.")

**B.** **Plaintiff's Copyright Claim is Sufficiently Plead, and an Amendment Would Not Be Futile.**

To establish copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991). Defendant IndyBay alleges that Plaintiff failed to properly plead that he is the owner of a valid copyright. This argument is baseless based on even a cursory review of the Complaint, FAC and proposed SAC.

Defendant IndyBay alleges that Plaintiff's complaint contains insufficient allegations to support standing to sue under the Copyright Act, citing *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881 (9th Cir. 2005) *Silvers* is readily distinguishable from the instant action as it involved an accrued assignment. In *Silvers*, the court was faced with whether an assignee who held an accrued claim for copyright infringement could institute an action for infringement. *Id*. The assignee wrote a script for a made for television movie and the assignor assigned her all right, title, and interest in any claims against the company with respect to the screenplay. *Id*. The court in *Silvers* held that "the bare assignment of an accrued cause of action is impermissible under 17 U.S.C § 510(b). *Id*. At 890. In contrast to *Silver,* Plaintiff's complaint alleges absolute ownership.

IndyBay's citations to *Aalmuhammed v. Lee*, 202 F.3d 1227, 1232-33 (9th Cir. 2000) and *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 61 (1884) are also unavailing. Neither case stands for the proposition that "work for hire" is the *sine qua non* of Rule 8 pleading for the purpose of a copyright infringement claim. In the alternative, if the Court determines that the claim requires such detailed provenance to meet the plausibility standards set forth in *Iqbal*, leave to amend should be granted to so state.

Furthermore, the present motion is Defendant Indybay's first responsive pleading in this matter therefore, an amendment to allege any additional factual allegations in this matter would not prejudice any defendant. As detailed in the Supplemental Declaration of Dow W. Patten, filed on November 7, 2011, on October 23, 2013 the United States Copyright Office issued Plaintiff a copyright registration for the work entitled "Dionne Choyce Portrait" being the same image referenced to as "dionne_choyce.jpg" (*see* Dkt # 37-1, Exh. "A".) Copyright registration is

5

prima facie evidence of ownership. 17 U.S.C. § 410(c); *Aik Cheong Neo v. Marina Bros., Inc.*, 2009 U.S. Dist. LEXIS 69475 (N.D. Cal. 2009). Accordingly, Plaintiff respectfully requests that the Court, pursuant to Federal Rule of Civil Procedure 15(a) to grant Plaintiff Choyce leave to amend to cure any alleged deficiencies in the First Amended Complaint, with respect to Plaintiff's copyright claim against Defendant Indybay.

### C. Defendant Indybay Fails To Qualify For Immunity Under Section 230 Of The Communications Decency Act

As an initial matter, the Court's December 2, 2013 Order addressed Layer 42's arguments concerning immunity. Accordingly, Indybay must establish that it is shielded from liability under Section 230 of the Communications Decency Act ("CDA") for the defamation alleged in the First Amended Complaint.

Section 230(c)(1) of the Communications Decency Act ("CDA") provides that "[n]o provider or user of an interactive computer service shall be treated as a publisher or speaker of any information provided by another content provider." 47 U.S.C. § 230(c)(1). A website is liable for the unlawful content of online material only if the website contributes "materially . . . to its alleged unlawfulness." *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1167 (9th Cir. 2008) (en banc). For purposes of the present motion, Plaintiff's complaint, as set forth below, sets forth sufficient facts to demonstrate that Defendant Indybay— as a separate Defendant or as acting through one or more of its "collective members" sued as DOES—is much more than a passive infrastructure provider.

As alleged in the First Amended Complaint, "Plaintiff is informed and believes Defendants, and each of them, by the herein described acts, did negligently, recklessly, and intentionally cause publications of defamation, of and concerning Plaintiff, to third persons and to the community. These false and defamatory statements include [the] express and implied statement: "The Choyce Law Firm evicted from building." (Dkt # 26, ¶ 28.), and "Plaintiff is informed and believes Defendants DOES 1-10, by the herein-described acts, conspired to, and in fact, did negligently, recklessly, and intentionally cause publications of defamation, of and concerning Plaintiff, to third persons and to the community. . . ." (*Id.*, ¶60).

6

SER 079

These allegations of conspiracy and concerted action flow directly from Defendant Indybay's chosen business form and methodology. The Morse Declaration, although improper, confirms that Indybay continues to obscure its membership, its rules, its editorial board, its editorial policies, its agreements, and essentially everything about it; thereby leaving persons damaged by defamatory content on indybay.org with only one option: hire attorneys and bring a lawsuit.

As pointed out by Indybay, Plaintiff alleges in the FAC that the May 24 post was "posted and/or created" by Defendants DOES 3 and 4" to a website "managed" by Indybay. (Dkt # 26, FAC ¶¶ 19-21, 31.) Moreover, Plaintiff has alleged that Defendant Indybay "sponsors and operates" the website wherein the challenged statements appeared. (Dkt # 26, FAC ¶ 7.) As stated in the concurring opinion in *Barrett v. Rosenthal*, there is no §230 immunity if the "user" is in a conspiracy with the "information content provider" providing the information. *Barrett v. Rosenthal*, 40 Cal. 4th 33, 63 (Cal. 2006). The First Amended Complaint's allegations of conspiracy and concert of action as to the DOE members of the "collective" and as to Defendant Indybay as the "collective", are based upon the facts, information, and belief available to Plaintiff at the time of the filing.

Indybay, for its part, has pointed to nothing in the allegations of the First Amended Complaint that qualifies it as the type of passive infrastructure provider which routinely obtain §230 immunity. Similarly, the Declaration of the alleged "collective" member Mr. Morse (to which Plaintiff specifically objects) provides even more support for a finding that no Section 230 immunity can attach to a "collective" that operates in near total obscurity.

As detailed above, prior to filing the First Amended Complaint, Plaintiff sought the removal of the defamatory content by Defendant Indybay, by identifying the individuals who posted and/or created the content alleged in the above referenced paragraphs. Defendant Indybay refused to provide any such information to assist Plaintiff in removing the defamatory statements. Defendant Indybay, alleges in its moving papers that most, but not all content contained on the indybay.org website is provided by third party users thereby evidencing that Indybay is more than an internet service provider. (Dkt # 31, p. 3:5-6.)

SER 080

The assertion contained in Indybay's moving papers that it can identify its members and/or users by name and e-mail address begs the question of why it did not do so when Plaintiff attempted to informally resolve the issue, nor at any time since.  Apparently, Indybay can readily identify the DOE defendants, but has chosen not to do so in order to shield itself, its members, its collective-within-a-collective editorial body, or other Defendants[2].

### D.  California's Anti-SLAPP Statute Does Not Apply To Plaintiff's Second Claim Alleged Against Defendant Indybay.

The Complaint, First Amended Complaint and Proposed Second Amended Complaint all allege that Plaintiff was defamed on two grounds:  (1) allegations of criminal wrongdoing; i.e., embezzlement, and (2) allegations that Plaintiff's law firm was evicted from its long-time office. The Court's December 2, 2013 Order made clear that the first ground, criminal wrongdoing, is a matter of public concern for purposes of Anti-SLAPP analysis.  The Court noted that no showing of public concern had been made related to the eviction allegation (Dkt #22).

A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry. First, a defendant "must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F. Supp. 2d 1127, 1128 (N.D. Cal. 1999) Second, once the defendant has made a prima facie showing, "the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Globetrotter Software*, 63 F. Supp. 2d at 1129.

Defendant Indybay alleges that Plaintiff's defamation claim, as alleged in the First Amended Complaint, is vulnerable to an anti-SLAPP motion because it falls within subsection (e)(2) as a writing in connection with an issue under review by a judicial body as well as (e)(3) and (e)(4) as constitutionally protected speech activity "in connection with a public issue or an issue of public interest." (Dkt # 31, MTD p. 8:25-28.)   This argument is unpersuasive and insufficient to invoke the draconian remedies of the Anti-SLAPP statute.

---

2  Should the Court rule that  §230 immunity applies, Plaintiff specifically requests the Court grant Plaintiff leave to amend to file its proposed Second Amended Complaint to incorporate these newly discovered facts.

8

SER 081

As alleged in the First Amended Complaint, Plaintiff's second claim for defamation against Defendant Layer 42, Defendant Indybay, Defendant Cernio and Does 1-10, is based upon the false and defamatory statement, "The Choyce Law Firm evicted from building." (Dkt # 26, FAC ¶ 28.) This is the title of May 24 posting. Indybay claims that Plaintiff is alleging that all the content in the May 24, 2012 post relates to Plaintiff's claim for defamation against Indybay and therefore the broad topic of the May 24 post continues to be Plaintiff's alleged unethical conduct. (Dkt # 31, p. 9:6-9.) This flies in the face of the text of the actual posting which focuses on an alleged (and patently false) non-payment of rent.

Furthermore, Defendant cites to *Doe v. Gangland Prods.*, 730 F.3d 946, 955-56 (9th Cir. 2013) to support its position that Plaintiff's second claim for defamation is subject to an anti-SLAPP motion. (Dkt # 31, p. 2:18-21; p. 9:4-5.) In *Doe*, the court was faced with a television broadcast regarding gang violence and murder. The district court initially determined that the defendant had to show that including the plaintiff's identity in the television program was 'in connection with a public issue or an issue of public interest.' *Doe*, 730 F.3d at 955. The Ninth Circuit reversed, holding that defendants' acts in furtherance of their right of free speech were in connection with issues of public interest of gang violence and murder. *Id*. at 957.

*Doe* is distinguishable from the facts presented here: the "Evicted" title of the May 24 post is the gravamen and thrust of Plaintiff's second cause of action alleged against, *inter alia*, Indybay. (Dkt # 26, FAC ¶ 28.) This is further evidenced by Plaintiff's third claim which alleges defamation only against Doe Defendants 1-10, for the statements regarding content concerning embezzlement from the homeless, the filing of criminal charges, and prison time. Accordingly, there are separate and distinct claims for defamation based upon subject matter.[3]

Defendant further alleges that if the statement about eviction could be considered alone, it would fall within subsection (e)(2) because evictions in California can only be achieved through

---

3  Defendant cites to *Lanthrop v. Donohue*, 367 U.S. 820, 832 (1961), to support its position that this false defamatory statement regarding Plaintiff being evicted is a matter of public concern. *Lanthrop v. Donohue*, dealt with a matter of integration of the bar in Wisconsin and related mandatory payment and the statement concerning public interest was in reference to the court's examination of the existing procedures governing admission, discipline of lawyers and the prevention of the unauthorized practice of the law. *Id*.

9

1   legal proceedings outlined in Code of Civil Procedure §§ 1161-1179 for an unlawful detainer

2   action.   Self-help evictions occur every day in California, whether or not they are permitted

3   under the law.  The May 24 posting which is the subject of the First Claim does not reference any

4   unlawful detainer action or proceedings.  The Court should reject outright this attempt conjure a

5   public interest component to the "Eviction" posting.

6        Defendant's citation to *Lafayette Morehouse* is completely inapposite, as  *Lafayette*

7   involved a pending legislative matter. (*Lafayette Morehouse, supra*, 37 Cal. App. 4th at p. 863.)

8   The court found the challenged statements fell within section 425.16, subdivision (e)(2) because

9   they concerned a matter ***that was pending before a legislative body***. (emphasis added) (37 Cal.

10  App. 4th at pp. 862-863.) No such matter was pending before a legislative body in the instant

11  action.

12       Defendant's citation to *Clark v. Mazgani*, 170 Cal. App. 4th 1281, 1286, 89 Cal. Rptr. 3D

13  24 (2009) is similarly off-base.  . In *Clark,* a tenant sued the landlord for fraud and unlawful

14  eviction, and failure to pay relocation expenses. *Id.* The landlord responded with a special

15  motion to strike Code Civ. Proc., § 425.16 arguing the tenant's complaint arose from the

16  landlord's acts or statements in furtherance of her constitutional rights. *Id*. The court in *Clark*

17  noted that the plaintiff's complaint was not premised on the defendant's protected activities of

18  initiating or prosecuting the unlawful detainer action, but on the plaintiff's removal of the

19  apartment from the rental market and fraudulent eviction of plaintiff for the purpose of installing

20  a family member who never moved in. *Id*. at 1286. The court in *Clark*  noted that "[t]erminating

21  a tenancy or removing a property from the rental market are not  activities taken in furtherance of

22  the constitutional rights of petition or free speech." *Id*. at 1286-87; quoting (*Marlin, supra*, 154

23  Cal.App.4th at p. 161; see *Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109

24  Cal.App.4th 1308, 1318. The court in *Clark* found that the defendant could not sustain an anti-

25  SLAPP motion on these grounds as the conduct alleged in the complaint was not based on

26  protected activities of initiating or prosecuting the unlawful detainer action. *Id*. at 1290.

27       Similarly here, the false and defamatory statement, made with respect to the second claim

28  for defamation, makes no reference to any official proceeding. In fact, no such legal/judicial

proceeding ever occurred. (Dkt # 11, Choyce Decl., ¶ 8-10.) Additionally, the Court noted that with respect to Layer 42, any defamation claim based upon statements of Plaintiff's firm being evicted for nonpayment of rent are not vulnerable to an anti-SLAPP motion. (Dkt # 22, p. 13:10-12.) Accordingly, Indybay cannot establish that the false and defamatory statement alleged in the second cause of action is in connection with an issue of public interest nor that it is a writing in connection with an issue under review by a judicial body and the Court should deny Indybay's special motion to strike.

Furthermore, as the Court has previously noted, the the anti-SLAPP motion must be read in light of the Federal Rules of Civil Procedure. "Where, as here, the process of discovery is not begun or is incomplete, the rule . . . is . . . : (1) If the motion pursuant to section 425.16 challenges the legal sufficiency of the complaint, and does not require the consideration of facts that are produced through the discovery process, then the issue is decided under the standards applicable to a motion to dismiss pursuant to Rule 12(b)(6) . . . [and] (2) If the motion challenges the factual basis of the plaintiff's case, and relies on declarations and affidavits produced through the discovery process, then the application of Rule 56 may require the motion to strike pursuant to section 425.16 be denied as premature." *Aeroplate Corp. v. Arch Ins. Co.*, 2006 U.S. Dist. LEXIS 82180, 2006 WL 3257487, at *5 (E.D. Cal. Nov. 8, 2006) (citing *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973 (C.D. Cal. 1999).

This is precisely the situation presented by the present motion. The declarations submitted in support are based upon hearsay, impermissible legal conclusions and lack foundation: the declarants testify as to the nature of the written agreements between Indybay and the other entities in which it is involved and the degree of control over the content of postings, yet fail to provide any documentary evidence to support these assertions. The issue of immunity cannot be decided on declarations alone, and the offending information is false and readily verifiable as false. (Dkt # 11, Choyce Decl. ¶¶ 4-15). Without the benefit of discovery resolving the issue of immunity would be improper.

## IV. CONCLUSION

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS            3:13-cv-01842-JST

SER 084

Based on the foregoing, Plaintiff requests the Court deny the motion in its entirety.  In the alternative, Plaintiff requests that the court grant (1) Plaintiff leave to file a Second Amended Complaint to fully cure any alleged deficiencies; (2) if the Court considers Indybay's declarations and exhibits, thereby transforming this action into a Summary Judgment Motion, permit Plaintiff to conduct discovery necessary to oppose summary judgment pursuant to Federal Rule of Civil Procedure 56(d); and (3) deny Defendant Indybay's special motion to strike.

Respectfully submitted, this 23rd day of January, 2014

SMITH PATTEN

_____
Dow W. Patten, Esq.
Spencer F. Smith, Esq.
Attorneys for Plaintiff Choyce

12

# EXHIBIT "A"

SMITH PATTEN
SPENCER F. SMITH, ESQ. (SBN: 236587)
DOW W. PATTEN, ESQ., (SBN:135931)
353 Sacramento St., Suite 1120
San Francisco, California 94111
Telephone (415) 402-0084
Facsimile (415) 520-0104

Attorneys for Plaintiff
DIONNE CHOYCE

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

DIONNE CHOYCE , an individual,

        Plaintiff,

  v.

SF BAY AREA INDEPENDENT MEDIA
CENTER, a.k.a. IMC, SF BAY AREA, a.k.a.
SF BAY AREA IMC; an unincorporated
association; LAYER42.NET, INC., a
California Corporation, CERNIO
TECHNOLOGY COOPERATIVE, an
unincorporated association, and DOES 1-10,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No.: 13-cv-01842-JST**

**[PROPOSED] SECOND AMENDED
COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF**

**(1) INFRINGEMENT OF COPYRIGHT**

**(2) DEFAMATION**

**(3) DEFAMATION**

**(4) LIBEL**

**JURY TRIAL DEMANDED**

COMES NOW, Plaintiff DIONNE CHOYCE ("CHOYCE") to complain against the

named Defendants, and each of them, as follows:

## JURISDICTION AND VENUE

1.     This is a civil action seeking damages and injunctive relief for copyright infringement

under the copyright laws of the United States (17 U.S.C. § 101 et seq.). This Court has

1

SER 087

jurisdiction under 17 U.S.C. § 101 et seq.; 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338(a) (copyright). The Court has pendent jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in this Court because the acts complained of occurred in the Northern District of California, the parties are all residents of and within the Northern District of California, and Plaintiff has been damaged in excess of the jurisdictional amount of this Court.

## INTRODUCTION

5.      This is an action for damages and injunctive relief for Copyright Infringement, Defamation, and Libel. This action arises out of events involving Plaintiff and Defendants.

## THE PARTIES

6.      Plaintiff CHOYCE is an attorney, licensed to practice law in the State of California, and a former prosecutor, and Deputy District Attorney for the County of Alameda. Plaintiff CHOYCE actively engages in the practice of law, through his firm, The Choyce Law Firm.

7.      Upon information and belief, Defendant SF BAY AREA INDEPENDENT MEDIA CENTER, a.k.a. IMC, SF BAY AREA, a.k.a. SF BAY AREA IMC is an unincorporated association located and operating in the County of San Francisco, within the Northern District of California, which sponsors and operates the independent media website "indybay.org".

8.      Upon information and belief, Defendant LAYER42.NET, INC., is a California Corporation, with its principal place of business in Santa Clara County California within the Northern District of California, which provides Internet connectivity, hosting, and infrastructure to co-Defendant SF BAY AREA INDEPENDENT MEDIA CENTER, a.k.a. IMC, SF BAY AREA, a.k.a. SF BAY AREA IMC in furtherance of the website "indybay.org"

2

SER 088

9.      Upon information and belief, Defendant CERNIO TECHNOLOGY COOPERATIVE is an unincorporated association, operating in the Northern District of California in the city of Santa Rosa, California, which, in conjunction with co-Defendant LAYER42.NET, INC., which provides Internet connectivity, hosting, and infrastructure to co-Defendant SF BAY AREA INDEPENDENT MEDIA CENTER, a.k.a. IMC, SF BAY AREA, a.k.a. SF BAY AREA IMC in furtherance of the website "indybay.org".

10.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1-10, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants is responsible in some manner for the occurrences, acts and omissions alleged herein, and that Plaintiff's injuries were proximately caused by such aforementioned defendants.

11.     Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, each of the defendants was acting as the partner, agent, servant, and employee of each remaining defendants, and in doing the things alleged herein was acting within the course and scope of such agency and with the knowledge of the remaining defendants, and that each defendant is responsible for the occurrences, acts and omissions of each other defendant complained of herein.

## FACTS COMMON TO ALL CAUSES OF ACTION

12.     Plaintiff CHOYCE was admitted to the State Bar of California in 2001, and has been an active member of the California bar since that time through the date of this complaint, with no record of discipline.

3

SER 089

13.     Plaintiff CHOYCE has built a law firm from the ground up, with offices in Oakland, San Mateo, Sacramento, and Fairfield, California.  offers and advertises legal services to the public through his website, "choycelawfirm.com".

14.     Plaintiff CHOYCE has invested substantial time, effort, and money in the building of his on-line reputation, including his website and the domain "choycelawfirm.com", and in promoting and optimizing the site and its links to enhance the website's ranking in searches for legal services.

15.     As part of the offering and advertising of legal services through his website, Plaintiff CHOYCE places original images and graphics on the website, including original images and likenesses of Plaintiff CHOYCE, including digital files named "choyce.jpg" .

16.     On or about April 25, 2012, Defendants DOES 1 and 2 posted and/or created a web page to and/or on Defendant SF BAY AREA INDEPENDENT MEDIA CENTER, a.k.a. IMC, SF BAY AREA, a.k.a. SF BAY AREA IMC's managed website "indbay.org" a page, story, or posting entitled, "Attorney Dionne choyce who embezzled from homeless may serve prison time", located at the following uniform resource locator:

        http://www.indybay.org/newsitems/2012/04/25/18712101.php

17.     On or about April 25, 2012, Defendants DOES 1 and 2 posted and/or created a web page content on Defendant SF BAY AREA INDEPENDENT MEDIA CENTER, a.k.a. IMC, SF BAY AREA, a.k.a. SF BAY AREA IMC's managed website "indbay.org" within the page, story, or posting entitled, "Attorney Dionne choyce who embezzled from homeless may serve prison time", the a graphic image of Plaintiff CHOYCE used by Plaintiff CHOYCE on his law firm's website, entitled "dionne_choyce.jpg" (the "Copyrighted Work").

4

SER 090

18.     On or about April 25, 2012, Defendants DOES 1 and 2 posted and/or created a web page content on Defendant SF BAY AREA INDEPENDENT MEDIA CENTER, a.k.a. IMC, SF BAY AREA, a.k.a. SF BAY AREA IMC's managed website "indbay.org" within the page, story, or posting entitled, "Attorney Dionne choyce who embezzled from homeless may serve prison time",  the following text, "The Federal Complaint that was filed against Jubilee Restoration has been stepped up to another level as the alleged Criminal Ringleader Dionne Choyce has had charges filed against him as a conspirator after his brother Reverend Gordon Choyce passed away. Mr. Choyce had no comment as his offices were contacted in Fairfield, however, if convicted he could face a total of 17 years in prison. Dionne choyce had the complaint served on him by the Department of justice on May 13, 2009,"  all of which is demonstrably false and readily verifiable as false.

19.     On or about May 24, 2012, Defendants DOES 3 and 4 posted and/or created a web page to and/or on Defendant SF BAY AREA INDEPENDENT MEDIA CENTER, a.k.a. IMC, SF BAY AREA, a.k.a. SF BAY AREA IMC's managed website "indbay.org" a page, story, or posting entitled, "The Choyce Law Firm evicted from building", located at the following uniform resource locator:

        http://www.indybay.org/newsitems/2012/05/24/18714071.php

20.     On or about  May 24, 2012, Defendants DOES 3 and 4 posted and/or created a web page content on Defendant SF BAY AREA INDEPENDENT MEDIA CENTER, a.k.a. IMC, SF BAY AREA, a.k.a. SF BAY AREA IMC's managed website "indbay.org" within the page, story, or posting entitled, "The Choyce Law Firm evicted from building", the a graphic image of Plaintiff CHOYCE used by Plaintiff CHOYCE on his law firm's website, entitled "dionne_choyce.jpg".

5

SER 091

21.     On or about May 24, 2012, Defendants DOES 3 and 4 posted and/or created a web page content on Defendant SF BAY AREA INDEPENDENT MEDIA CENTER, a.k.a. IMC, SF BAY AREA, a.k.a. SF BAY AREA IMC's managed website "indbay.org" within the page, story, or posting entitled, "The Choyce Law Firm evicted from building",  the following text, "As consumers get fed up with non-payment, so do Landlords. This time it was a landlord who read an article about Mr. Dionne Choyce an Attorney who embezzled from the Homeless. He went based on principle after Mr. Choyce and the Choyce Law firm failed to pay 2 months of rent. Many in the community applauded the eviction. One concerned citizen stated that Mr. Choyce has been dooping us for years. It is about time he received a dose of his medicine.

The Choyce Law Firm, a firm that preys on lower income DUI cases and chief general counsel for Jubilee Restoration, a Berkeley non profit housing organization who was declared by the department of Justice (see link) to be a organized crime that ripped off homeless people has fell prey to financial hardship leading his firm to be evicted at their current location. Although Mr. Choyce had no comment when we reached his firm, the landlord stated he did it for the 99% that Mr Choyce has ripped off. Many see the Landlord as a hero and actually feel that he has restored dignity to many individuals who were ripped off by Mr. Choyce.  We will be back for a part 2 tomorrow with video coverage at the location which has been given 48 hours. As I caught news cameras driving by, it was shocking to see many protesting in front of the Choyce Law Firm in Fairfield."  all of which is demonstrably false and readily verifiable as false as Plaintiff has never been evicted from the offices he has established for many years.

**FIRST CLAIM**
**INFRINGEMENT OF COPYRIGHT**
**(Alleged Against All Defendants)**

22.     As a first, separate and distinct cause of action, Plaintiff complains of Defendants, and each of them, and for a claim alleges:

6

SER 092

23.     Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce the Copyrighted Work and to distribute the Copyrighted Work to the public.

24.     On or about October 23, 2013, (the "Registration Date") the United States Copyright Office issued to Plaintiff Dionne Choyce a copyright registration for the work entitled "Dionne Choyce Portrait".  That portrait is the same image as the image referred to as "dionne_choyce.jpg" and is the same image referenced in Plaintiff's multiple DMCA takedown notices issued prior to this litigation, to which Defendants, upon information and belief, based upon their contracts, agreements, understandings, and practice between them, allow Defendants complete control over the content of any and all web pages served through the information systems set forth herein, allowing each Defendant to specify words and images which will and will not be published through the information systems set forth herein, which control is evidenced by the removal—albeit untimely—of the offending infringing and defamatory content after DMCA takedown notices.

25.     Without the permission or consent of Plaintiff, Defendants have used the Copyrighted Work, and distribute the Copyrighted Work to the public, and/or to make the Copyrighted Work available for distribution to others.   In doing so, Defendants have violated Plaintiffs' exclusive rights of reproduction and distribution. Defendants' actions constitute infringement of Plaintiff's copyrights and exclusive rights under copyright.

26.     Plaintiff is informed and believes that the foregoing acts of infringement have been willful and intentional, in disregard of and with indifference to the rights of Plaintiff.

27.     As a result of Defendants' infringement of Plaintiff's copyright and exclusive rights under copyright, Plaintiff is entitled to statutory damages pursuant to 17 U.S.C. § 504(c) for all Defendants' infringement of the Copyrighted Work after the Registration Date and injunctive

7

SER 093

relief prohibiting future unauthorized use. Plaintiff further is entitled to his attorneys' fees and costs pursuant to 17 U.S.C. § 505 for all violations occurring after the Registration Date.

28.     The conduct of Defendants is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's copyright, and ordering Defendants to destroy all copies of the Copyrighted Work made in violation of Plaintiff's exclusive rights.

**SECOND CLAIM**
**DEFAMATION**
**(Alleged Against DEFENDANTS LAYER42.NET, INC., CERNIO TECHNOLOGY COOPERATIVE, SF BAY AREA INDEPENDENT MEDIA CENTER, a.k.a. IMC, SF BAY AREA, a.k.a. SF BAY AREA IMC, and DOES1-10 as to "The Choyce Law Firm evicted from building")**

29.     As a second, separate and distinct claim, Plaintiff complains of Defendant Layer42.Net Inc., Cernio Technology Cooperative, Indymedia, and Does 1-10s, and each of them, and for a claim alleges:

30.     Plaintiff incorporates by reference herein each and every factual allegation contained in paragraphs 1 through 28, inclusive, as though fully set forth herein.

31.     Plaintiff is informed and believes Defendants, and each of them, by the herein-described acts, did negligently, recklessly, and intentionally cause publications of defamation, of and concerning Plaintiff, to third persons and to the community, to wit, the false and defamatory express and implied statement:  "The Choyce Law Firm evicted from building".

32.     This false statement expressly and impliedly stated that Plaintiff CHOYCE's law firm had been evicted from its offices.

33.     This false statement of fact expressly stated that Plaintiff CHOYCE had been evicted from his office, which was demonstrably false and easily and readily verifiable as false.

8

SER 094

34.     While the precise dates of these publications are not known to Plaintiff, except as herein alleged, the posting of the false statement concerning Plaintiff CHOYCE's law firm being evicted from its offices on the Indybay.org website as of May 24, 2012 and continued to be published as of the date of the filing of the original Complaint in this matter.

35.     These publications were outrageous, negligent, reckless, intentional, and maliciously published and republished by Defendants, and each of them.

36.     Upon information and belief, Defendant Layer 42.Net Inc.'s contracts, agreements, understanding, and practices with the other Defendants give Layer42.Net Inc. complete control over the content of any and all web pages served through its system, allowing it to specify words and images which will and will not be published through its systems, which control is evidenced by it publishing of a DMCA takedown agent, and its responses to Plaintiff's demands to remove the offending infringing and defamatory content, albeit in a belated fashion.

37.     Upon information and belief, Defendant Cernio Technology Cooperative's and contracts, agreements, understanding, and practices with the other Defendants give Cernio complete control over the content of any and all web pages served through its servers, allowing it to specify words and images which will and will not be published through its servers, which control is evidenced by the removal of the offending infringing and defamatory content after DMCA takedown notices.

38.     Upon information and belief, Defendant Indybay's contracts, agreements, understanding, and practices with the other Defendants give Indybay complete control over the content of any and all web pages served through its pages, allowing it to specify words and images which will and will not be published through its pages, which control is evidenced by the removal of the offending infringing and defamatory content after DMCA takedown notices.

39.     Plaintiff is informed and believes that the negligent, reckless, and intentional publications by Defendants, and each of them, were and continue to be, foreseeably published and republished by Defendants, their agents, employees, and recipients in the community.

9

SER 095

40.     Plaintiff hereby seeks damages for these publications and all foreseeable republications of the defamatory statement ""The Choyce Law Firm evicted from building" discovered up to the time of trial.

41.     During the above-described time-frame, Defendants, and each of them, did negligently, recklessly, and intentionally cause excessive and unsolicited publication of defamation, of and concerning Plaintiff, to third persons, who had no need or desire to know. Those third person(s) to whom these Defendants published this defamation are believed to include, but are not limited to, members of the general public who used browsers to visit the following uniform resource locator :           http://www.indybay.org/newsitems/2012/05/24/18714071.php from May 24, 2012 through at least the filing of the original Complaint in this matter.

42.     The foregoing false statement made by Defendants was further libelous and defamatory in that the likeness and image of Plaintiff CHOYCE was unlawfully published in conjunction with the false statements.

43.     The foregoing false statement made by Defendants was further libelous and defamatory per se in that it imputed, reference to Plaintiff's profession that have a natural tendency to lessen the profits of Plaintiff's business.

44.      Plaintiff is informed, believes that these false and defamatory statement will continue to be published by Defendants, and each of them, and will be foreseeably republished by their recipients, all to the ongoing harm and injury to Plaintiff's business, professional, and personal reputations. Plaintiff also seeks redress in this action for all foreseeable republications, including his own compelled self-publication of these defamatory statements.

45.     The defamatory meaning of all of the above-described false and defamatory statement and their reference to Plaintiff, were understood by these above-referenced persons and other members of the community who are known to Defendants, and each of them, but unknown to Plaintiff at this time.

46.     Defendants' defamatory publications against Plaintiff referenced above are untrue.

47.     The above defamatory statement on its face is and was understood as assertion of fact, and not as opinion.

10

SER 096

48.     Plaintiff is informed and believes this defamation will continue to be negligently, recklessly, and intentionally published and foreseeably republished by Defendants, and each of them, and foreseeably republished by recipients of Defendants' publications, thereby causing additional injury and damages for which Plaintiff seeks redress by this action.

49.     The false and defamatory publications (as set forth above) were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege (which Plaintiff denies existed), since the publications, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in order to justify the illegal and cruel actions of Defendants, and each of them, to cause further damage to Plaintiff's professional and personal reputation, and to cause his business to become unprofitable.

50.     Each of these publications by Defendants, were made with knowledge that no investigation supported the unsubstantiated and obviously false statements.

51.     The Defendants published this statement knowing it to be false, unsubstantiated by any reasonable investigation. These acts of publication were known by Defendants, and each of them, to be negligent to such a degree as to be reckless. In fact, not only did Defendants, and each of them, have no reasonable basis to believe the statement, but they also had no belief in the truth of the statement, and in fact knew the statement to be false. Defendants, and each of them, excessively, negligently, and recklessly published the statement to individuals with no need to know, and who made no inquiry, and who had a mere general or idle curiosity of this information.

52.     The above complained-of publications by Defendants, and each of them, were made with hatred and ill will towards Plaintiff and the design and intent to injure Plaintiff, Plaintiff's good name, his reputation, his profession, and his law practice. Defendants, and each of them, published the statement, not with an intent to protect any interest intended to be protected by any privilege, but with negligence, recklessness and/or an intent to injure Plaintiff and destroy his reputation. Therefore, no privilege existed to protect any of the Defendants from liability for any of these aforementioned publications or republications.

11

53.     As a direct and proximate result of the publication and republication of these defamatory statement by Defendants, and each of them, Plaintiff has suffered injury to his personal, business and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, and general damage in an amount according to proof.

54.     Defendants, and each of them, committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil motive amounting to malice (as described above), and which abused and/or prevented the existence of any conditional privilege, which in fact did not exist, and with a reckless and conscious disregard of Plaintiff's rights.

55.     All actions of Defendants, and each of them, their agents and employees, herein alleged were known, ratified and approved by the Defendants, and each of them. Plaintiff thus is entitled to recover punitive and exemplary damages from Defendants, and each of them, for these wanton, obnoxious, and despicable acts in an amount based on the wealth and ability to pay according to proof at time of trial.

56.     Defendant's defamatory publications were a substantial factor in causing Plaintiff harm. Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court, as set forth below.

**THIRD CLAIM**
**DEFAMATION**
**(Alleged Against Defendants DOES 1-10)**

57.     Plaintiff incorporates by reference herein each and every factual allegation contained in paragraphs 1 through 56, inclusive, as though fully set forth herein.

58.     Plaintiff is informed and believes Defendants DOES 1-10, by the herein-described acts, conspired to, and in fact, did negligently, recklessly, and intentionally cause publications of defamation, of and concerning Plaintiff, to third persons and to the community. These false and

12

defamatory statements included express and implied statement: that Plaintiff "embezzled from the homeless."

59.     Plaintiff is informed and believes Defendants DOES 1-10, by the herein-described acts, conspired to, and in fact, did negligently, recklessly, and intentionally cause publications of defamation, of and concerning Plaintiff, to third persons and to the community. These false and defamatory statements included express and implied statement: that Plaintiff "may serve prison time."

60.     Plaintiff is informed and believes Defendants DOES 1-10, by the herein-described acts, conspired to, and in fact, did negligently, recklessly, and intentionally cause publications of defamation, of and concerning Plaintiff, to third persons and to the community. These false and defamatory statements included express and implied statement: that "Criminal Ringleader Dionne Choyce has had charges filed against him as a conspirator after his brother Reverend Gordon Choyce passed away".

61.     Plaintiff is informed and believes Defendants DOES 1-10, by the herein-described acts, conspired to, and in fact, did negligently, recklessly, and intentionally cause publications of defamation, of and concerning Plaintiff, to third persons and to the community. These false and defamatory statements included express and implied statement: that Plaintiff,  "if convicted he could face a total of 17 years in prison."

62.     These and other similar false statements expressly and impliedly stated that Plaintiff CHOYCE had been charged with a crime.

63.     These and other similar false statements expressly and impliedly stated that Plaintiff CHOYCE had embezzled money from the homeless.

13

64.     These and other similar false statements expressly and impliedly stated that Plaintiff CHOYCE's law firm had been evicted from its offices.

65.     These false statements of fact expressly state that Plaintiff CHOYCE was dishonest and unethical because he faced criminal charges, embezzled from the homeless and had been evicted from his office, all of which were demonstrably false and easily and readily verifiable as false.

66.     While the precise dates of these publications are not known to Plaintiff, except as herein alleged, the posting of the false statement concerning Plaintiff CHOYCE's law firm being evicted from its offices on the Indybay.org website as of May 24, 2012 and continues to be published as of the date of this Complaint.

67.     These publications were outrageous, negligent, reckless, intentional, and maliciously published and republished by Defendants DOES 1-10.

68.     Plaintiff is informed and believes that the negligent, reckless, and intentional publications by Defendants DOES 1-10, were and continue to be, foreseeably published and republished by Defendants, their agents, employees, and recipients in the community.

69.     Plaintiff hereby seeks damages for these publications and all foreseeable republications discovered up to the time of trial.

70.     During the above-described time-frame, Defendants DOES 1-10, conspired to, and in fact, did negligently, recklessly, and intentionally cause excessive and unsolicited publication of defamation, of and concerning Plaintiff, to third persons, who had no need or desire to know. Those third person(s) to whom these Defendants published this defamation are believed to include, but are not limited to, members of the general public who used browsers to visit the following uniform resource locator

http://www.indybay.org/newsitems/2012/04/25/18712101.php

14

from April 25, 2012 to present.

71.     The defamatory publications consisted of written, knowingly false and unprivileged communications, tending directly to injure Plaintiff and Plaintiff's personal, business, and professional reputation. These publications included the following false and defamatory statements (in violation of Civil Code §§ 45, 45a and 46(3)(5)) with the meaning and/or substance: that Plaintiff was charged with a crime; that Plaintiff had embezzled from the homeless; that Plaintiff had been served with criminal charges as a co-conspirator; that Plaintiff's law firm had been evicted from its offices.

72.     The foregoing false statements made by Defendants DOES 1-10 were further libelous and defamatory in that the likeness and image of Plaintiff CHOYCE were unlawfully published in conjunction with the false statements.

73.     The foregoing false statements made by Defendants DOES 1-10 were further libelous and defamatory per se in that they imputed, reference to Plaintiff's profession that have a natural tendency to lessen the profits of Plaintiff's business, and if true, would render Plaintiff unfit to engage in his chose profession, the practice of law.

74.      Plaintiff is informed, believes that these false and defamatory per se statements will continue to be published by Defendants DOES 1-10, and will be foreseeably republished by their recipients, all to the ongoing harm and injury to Plaintiff's business, professional, and personal reputations. Plaintiff also seeks redress in this action for all foreseeable republications, including his own compelled self-publication of these defamatory statements.

75.     The defamatory meaning of all of the above-described false and defamatory statements and their reference to Plaintiff, were understood by these above-referenced persons and other

15

SER 101

members of the community who are known to Defendants DOES 1-10, but unknown to Plaintiff at this time.

76.     None of Defendants DOES 1-10's defamatory publications against Plaintiff referenced above are true.

77.     The above defamatory statements on their face are and were understood as assertions of fact, and not as opinion.

78.     Plaintiff is informed and believes this defamation will continue to be negligently, recklessly, and intentionally published and foreseeably republished by Defendants DOES 1-10, and foreseeably republished by recipients of Defendants' publications, thereby causing additional injury and damages for which Plaintiff seeks redress by this action.

79.     Each of these false defamatory per se publications (as set forth above) were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege (which Plaintiff denies existed), since the publications, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in order to justify the illegal and cruel actions of Defendants DOES 1-10, to cause further damage to Plaintiff's professional and personal reputation, and to cause his business to become unprofitable.

80.     Each of these publications by Defendants DOES 1-10, were made with knowledge that no investigation supported the unsubstantiated and obviously false statements.

81.     The Defendants DOES 1-10 published these statements knowing them to be false, unsubstantiated by any reasonable investigation. These acts of publication were known by Defendants DOES 1-10, to be negligent to such a degree as to be reckless. In fact, not only did Defendants DOES 1-10, have no reasonable basis to believe these statements, but they also had

16

no belief in the truth of these statements, and in fact knew the statements to be false. Defendants DOES 1-10, excessively, negligently, and recklessly published these statements to individuals with no need to know, and who made no inquiry, and who had a mere general or idle curiosity of this information.

82.  The above complained-of publications by Defendants DOES 1-10, were made with hatred and ill will towards Plaintiff and the design and intent to injure Plaintiff, Plaintiff's good name, his reputation, his profession, and his law practice. Defendants DOES 1-10, published these statements, not with an intent to protect any interest intended to be protected by any privilege, but with negligence, recklessness and/or an intent to injure Plaintiff and destroy his reputation. Therefore, no privilege existed to protect any of the Defendants from liability for any of these aforementioned publications or republications.

83.  As a direct and proximate result of the publication and republication of these defamatory statements by Defendants DOES 1-10, Plaintiff has suffered injury to his personal, business and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, and general damage in an amount according to proof.

84.  Defendants DOES 1-10, committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil motive amounting to malice (as described above), and which abused and/or prevented the existence of any conditional privilege, which in fact did not exist, and with a reckless and conscious disregard of Plaintiff's rights.

17

85. All actions of Defendants DOES 1-10, their agents and employees, herein alleged were known, ratified and approved by the Defendants DOES 1-10. Plaintiff thus is entitled to recover punitive and exemplary damages from Defendants DOES 1-10, for these wanton, obnoxious, and despicable acts in an amount based on the wealth and ability to pay according to proof at time of trial.

86. Defendants DOES 1-10's defamatory publications were a substantial factor in causing Plaintiff harm. Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court, as set forth below.

## FOURTH CLAIM
### LIBEL
### (Alleged Against Defendants DOES 1-10)

87. As a third, separate and distinct claim, Plaintiff complains of Defendants DOES 1-10 and for a claim alleges:

88. Plaintiff incorporates by reference herein each and every factual allegation contained in paragraphs 1 through 86, inclusive, as though fully set forth herein.

89. Plaintiff is informed and believes Defendants DOES 1-10 by the herein-described acts, conspired to, and in fact, did negligently, recklessly, and intentionally caused external written publications of libel, and libel per se, of and concerning Plaintiff, to third persons and to the community. These false and libelous statements were express: the publication on the Indybay.org website identifying Plaintiff CHOYCE by name and by infringing copyrighted image as one being charged with a crime; as one that had embezzled from the homeless; one that had been served with criminal charges as a co-conspirator; and whose law firm had been evicted from its offices.

90. These and other similar false statements expressly and impliedly conveyed that Plaintiff had actually engaged in criminal conduct, had been charged with criminal conduct, had been served with criminal process, and been evicted from his law office.

18

91.     The libelous publication consisted of written, knowingly false and unprivileged communications, tending directly to injure Plaintiff and Plaintiff's personal, business, and professional reputation. These publications included the following false and libelous statements on its website (in violation of Civil Code §§ 45, 45a and 46(3)(5)) with the meaning and/or substance: that Plaintiff had been charged with a crime of moral turpitude; Plaintiff had embezzled from the homeless; Plaintiff that had been served with criminal charges as a co-conspirator; and Plaintiff's law firm had been evicted from its offices. These and similar statements published by Defendants DOES 1-10 expressly and impliedly asserted that Plaintiff was dishonest and unethical because he had been charged with a crime of moral turpitude, been served with process as a co-conspirator, had embezzled from the homeless, and had his law firm evicted from its offices.

92.     The libelous meaning of all of the above-described false and libelous statements and their reference to Plaintiff, were understood by these above-referenced third person recipients and other members of the community who are known to Defendants DOES 1-10 but unknown to Plaintiff at this time.

93.     None of Defendants' libelous publications against Plaintiff referenced above are true.

94.     The above libelous statements were understood as assertions of fact, and not as opinion.

95.     Each of these false libelous publications (as set forth above) were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege (which Plaintiff denies existed), since the publications, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in order to justify the illegal and cruel actions of Defendants DOES 1-10 to cause further damage to Plaintiff's professional and personal reputation, and to cause him to be shunned by potential clients, deny the libelous statements to existing clients and colleagues, and to expend substantial sums in regaining his on-line reputation.

96.     Each of these publications by Defendants DOES 1-10 were made with knowledge that no investigation supported the unsubstantiated and obviously false statements. The Defendants, published these statements knowing them to be false, unsubstantiated by any reasonable

19

investigation. These acts of publication were known by Defendants DOES 1-10 to be negligent to such a degree as to be reckless. In fact, not only did Defendants DOES 1-10 have no reasonable basis to believe these statements, but they also had no belief in the truth of these statements, and in fact knew the statements to be false.

97.     The above complained-of publications by Defendants DOES 1-10 were made with hatred and ill will towards Plaintiff and the design and intent to injure Plaintiff, Plaintiff's good name, his reputation, employment and employability. Defendants DOES 1-10 published these statements, not with an intent to protect any interest intended to be protected by any privilege, but with negligence, recklessness and/or an intent to injure Plaintiff and destroy his reputation. Therefore, no privilege existed to protect any of the Defendants from liability for any of these aforementioned publications or republications.

98.     As a proximate result of the publication and republication of these defamatory statements by Defendants DOES 1-10 Plaintiff has suffered injury to his personal, business and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, and general damage in an amount according to proof.

99.     Defendants DOES 1-10 committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil motive amounting to malice (as described above), and which abused and/or prevented the existence of any conditional privilege, which in fact did not exist, and with a reckless and conscious disregard of Plaintiff's rights. All actions of Defendants DOES 1-10 their agents and employees, herein alleged were known, ratified and approved by the Defendants, and each of them. Plaintiff thus is entitled to recover punitive and exemplary damages from Defendants DOES 1-10 for these wanton, obnoxious, and despicable acts in an amount based on the wealth and ability to pay according to proof at time of trial.

20

100.    Defendants' libelous publications were a substantial factor in causing Plaintiff harm. Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court, as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1.    For an injunction prohibiting Defendants from continuing the publication of infringing, false, defamatory, and libelous content;

2.    For general and special damages for Defamation and Libel in amounts according to proof and in no event in an amount less than the jurisdictional limit of this Court;

3.    For statutory damages pursuant to 17 U.S.C. § 504(c) for all publications after the Registration date;

3.    For punitive damages in an amount sufficient to punish Defendants and deter unlawful conduct in the future;

4.    For attorney's fees as provided by law;

5.    For interest as provided by law;

6.    For costs of suit herein;

7.    For such other and further relief as the Court deems fair and just.

**JURY DEMAND**

Plaintiff hereby demands trial by jury of all matters so triable.


Dated: January __, 2013                    SMITH PATTEN


                                          _____
                                          DOW W. PATTEN
                                          Attorneys for Plaintiff
                                          DIONNE CHOYCE

21

Roger Myers (CA State Bar No. 146164)
roger.myers@bryancave.com
Leila Knox (CA State Bar No. 245999)
leila.knox@bryancave.com
Katherine Harrison (CA State Bar No. 285561)
katherine.harrison@bryancave.com
**BRYAN CAVE LLP**
560 Mission Street, 25th Floor
San Francisco, CA 94105-2994
Telephone:     (415) 675-3400
Facsimile:     (415) 675-3434

Attorneys for Defendant
SF BAY AREA INDEPENDENT MEDIA CENTER

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DIONNE CHOYCE, | Case No. CV 13 1842 JST |
| Plaintiff, | **MOTION FOR EXTENSION OF TIME TO ANSWER OR OTHERWISE RESPOND TO COMPLAINT** |
| v. | |
| SF BAY AREA INDEPENDENT MEDIA CENTER, a.k.a. IMC, SF BAY AREA, a.k.a. SF BAY AREA IMC; an unincorporated association; LAYER42.NET, INC., a California Corporation, CERNIO TECHNOLOGY COOPERATIVE, an unincorporated association, and DOES 1-10, | |
| Defendants. | |

*BRYAN CAVE LLP*
*560 MISSION STREET, 25TH FLOOR*
*SAN FRANCISCO, CA 94105-2994*

Defendant SF Bay Area Independent Media Center ("Indybay"), through its undersigned counsel, moves for a 30-day extension of time, to and including January 6, 2014, in which to answer or otherwise respond to the complaint in this action. In support of its motion, and as detailed in the Declaration of Leila Knox filed herewith ("Knox Decl."), Indybay respectfully states as follows:

1. This action was commenced when Plaintiff filed his lawsuit with this Court on April 23, 2013, naming SF Bay Area Independent Media Center as one of three named defendants.

2. According to the Court's docket sheet, Plaintiff made no attempt to serve Indybay for more than six months.

3. On November 14, 2013, Indybay's counsel checked the Court's docket in this action and noticed that a proof of service had been filed by Plaintiff. According to the proof of service, service on Indybay was attempted at 2940 16th Street in San Francisco on October 31, 2013, a location where Indybay has a mail drop but does not maintain any offices. The process server's declaration included in the proof of service said the complaint was left with an individual named Ben Terrall, who is not affiliated nor employed with Indybay. The complaint was subsequently mailed to the 2940 16th Street address as well, but without identifying to whom the package had been mailed. Both copies of the complaint were apparently deposited in Indybay's mail drop, and both included a form that would permit Defendant to waive service of process. However, as required under Federal Rule of Civil Procedure 4(d)(1), Plaintiff's attorney did not include a request for waiver of service, as the request form attached to the complaint was not filled in. Knox Decl., ¶¶ 2,3.

4. Since the complaint was not properly served on an officer or agent of Indybay, and Indybay checks the mail drop infrequently, Indybay was unaware Plaintiff had attempted to serve it until its counsel checked the Court's docket on November 14. After a representative from Indybay was informed by counsel of the contents of the proof of service, he checked and found two copies of the complaint in the mail drop. Knox Decl., ¶ 4.

5. Between November 27 and December 2, Indybay's counsel made several attempts to work with Plaintiff's counsel on the service defect, offering to waive service of process if

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

1    Plaintiff's counsel would send a completed request for waiver of service, or, alternatively, offering

2    to appear on the merits if Plaintiff's counsel would stipulate to a 30-day extension of time to

3    answer or otherwise respond to the complaint, up to and including January 6, 2014.  Knox Decl., ¶

4    6. This date was calculated using the date that Plaintiff's counsel presumptively mailed the

5    complaint to Indybay – October 31, 2013 – and a response date by Defendant of December 5,

6    2013, if service had indeed been effective (which Indybay does not believe to be the case).  Knox

7    Decl., ¶¶ 7,8.

8            6.       To date, Plaintiff's counsel has declined to provide a completed request for waiver,

9    or to stipulate to an extension of time to respond on the merits.  Rather than fight over service,

10   Indybay instead determined that it would seek a 30-day extension of time to answer or otherwise

11   respond to the complaint directly from the Court.  Plaintiff's counsel has not responded to

12   Indybay's question as to whether Plaintiff opposes this motion.  Knox Decl., ¶¶ 7, 8.

13           7.       The requested extension of time is not made for the purpose of delay, and will not

14   prejudice the interests of any party in this case.  Rather, the extension of time will give Defendant,

15   who, up until November 14, 2013, was not aware that any attempts at service had been made, time

16   to formulate a response to Plaintiff's complaint that addresses its merits in an attempt to seek an

17   early resolution of this case.

18           WHEREFORE, Defendant SF Bay Area Independent Media Center respectfully requests

19   that this Court enter an order granting it an additional 30 days, to and including January 6, 2014,

20   within which to answer or otherwise respond to Plaintiff's complaint.

21

22   Dated:    December 2, 2013                    Respectfully submitted,

23                                                **BRYAN CAVE LLP**

24

25                                                _____/s/_____
                                                      Leila Knox

26                                                Attorneys for Defendant
27                                                SF BAY AREA INDEPENDENT MEDIA CENTER

28

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA  94105-2994

1  Roger R. Myers (CA State Bar No. 146164)
   roger.myers@bryancave.com
2  Leila C. Knox (CA State Bar No. 245999)
   leila.knox@bryancave.com
3  Katherine Harrison (CA State Bar No. 285561)
   katherine.harrison@bryancave.com
4  **BRYAN CAVE LLP**
   560 Mission Street, 25th Floor
5  San Francisco, CA  94105-2994
   Telephone:    (415) 675-3400
6  Facsimile:    (415) 675-3434

7  Attorneys for Defendant
   SF BAY AREA INDEPENDENT MEDIA CENTER

8

9                    IN THE UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                        SAN FRANCISCO DIVISION

12

13  DIONNE CHOYCE,                          Case No. CV 13 1842 JST

14             Plaintiff,                    **DECLARATION OF LEILA KNOX IN
                                             SUPPORT OF MOTION FOR**
15       v.                                  **EXTENSION OF TIME TO ANSWER OR
                                             OTHERWISE RESPOND TO**
16  SF BAY AREA INDEPENDENT MEDIA            **COMPLAINT**
    CENTER, a.k.a. IMC, SF BAY AREA, a.k.a.
17  SF BAY AREA IMC; an unincorporated
    association; LAYER42.NET, INC., a California
18  Corporation, CERNIO TECHNOLOGY
    COOPERATIVE, an unincorporated
19  association, and DOES 1-10,

20             Defendants.

21

22

23       I, Leila Knox, declares as follows:

24       1.       I am an attorney duly licensed to practice law in the State of California, and I am an

25  associate with the law firm of Bryan Cave LLP, attorneys for Defendant SF Bay Area Independent

26  Media Center ("Indybay").  I make this declaration of my own personal knowledge.  If called as a

27  witness, I could and would testify competently to the facts stated herein.

28

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

2.       On November 14, 2013, I checked the docket in the above-captioned action and noticed that a proof of service had been filed that same day claiming that Indybay had been served with service of process on October 31, 2013.  The proof of service stated that service had been attempted at 2940 16th Street in San Francisco.  Indybay used to maintain a small office at this location, but has not rented space there for many years.  Indybay does have a mail drop at this address, which it checks infrequently.  Indybay otherwise has no personnel or other presence at this location.

3.       The declaration attached to the proof of service stated that the complaint had been served on Ben Terrall, a "person … apparently in charge of the office or usual place of business of the person served."  The declaration further stated that Mr. Terrall was "informed … of the general nature of the papers."  Mr. Terrall is neither employed nor affiliated with Indybay, and is not authorized to accept service on its behalf.  I subsequently spoke with Mr. Terrall by phone, and learned that Mr. Terrall had informed the process server that Indybay no longer had an office at that location but did have a mail drop.  Mr. Terrall also said that contrary to what is stated in the declaration, he had not been told by the process server that he was being given legal papers.  Mr. Terrall informed me he simply signed for the papers and then placed them in Indybay's mailbox.

4.       After I informed a representative of Indybay of the contents of the November 14 proof of service, he checked the mail drop at the 2940 16th Street location and found two copies of the complaint, one in an opened envelope that had been mailed to the address, but that did not have Indybay's name on it, and one that was not in an envelope.

5.       Rather than fight over service, Indybay is willing to waive service under Federal Rule of Civil Procedure 4(d).  However, upon reviewing the waiver of service, I noticed that the request for waiver of service, which immediately precedes the waiver of service itself, was not completed by Plaintiff's counsel, as required by Federal Rule of Civil Procedure 4(d)(1).

6.       Given this deficiency, I called Dow Patten, one of the attorneys for Plaintiff, in an attempt to cure this defect, and to let Plaintiff's counsel know that Indybay was willing to appear in this action.  I requested that Mr. Patten either send Indybay a completed request for waiver of service of process or stipulate to a 30-day extension of time for Indybay to respond to the

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

1   complaint.  Instead, Mr. Patten requested that I send him a letter explaining why I believed service

2   was ineffective.

3       7.      Although I have complied with Mr. Patten's request for more information, he has

4   yet to agree to either of our proposals for resolving the disagreement over the purported service.

5   Instead, in a series of emails and letters exchanged through this evening, he continues to request

6   information about Indybay.

7       8.      Since it does not appear that Plaintiff would agree to either of Indybay's requests

8   in connection with service of the complaint, I informed Mr. Patten today by email that Indybay

9   would move the court for an extension of time to respond to the complaint, and asked whether his

10  client intended to oppose this motion.  As of the time of this filing, Mr. Patten had not responded

11  to my request.  A true and correct copy of my email to Mr. Patten is attached as Exhibit D.

12      9.      Indybay will be prejudiced if is not given an extension of time to respond to the

13  complaint since it intends to address the merits of Plaintiff's complaint in an anti-SLAPP motion

14  to strike and motion to dismiss.  Although the Court today granted the motions to dismiss and

15  strike of co-defendant Layer42.net, Inc., we will need additional time to prepare Indybay's brief

16  and evidence explaining why the court's ruling applies equally to Indybay.  We do not foresee that

17  an extension of time will have any effect on scheduling or other time considerations related to this

18  case, especially in light of the Court's ruling today granting Layer42's motions.

19      I declare under penalty of perjury under the laws of the State of California that the

20  foregoing is true and correct.  Executed this 2nd day of December, 2013.

21

22                              /s/
                        _____
                        Leila Knox

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2015, I electronically filed the foregoing

with the Clerk of the Court for the United States Court of Appeals for the Ninth

Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that

service will be accomplished by the appellate CM/ECF system.

| | |
|---|---|
| Spencer F. Smith | Anthony Francis Basile |
| spencer@smithpatten.com | abasile@legalteam.com |
| Dow. W. Patten | Daniel L. Casas |
| dow.patten@gmail.com | dcasas@legalteam.com |
| SMITH PATTEN | CASAS RILEY & SIMONIAN, LLP |
| 221 Main Street, Suite 740 | 55 North 3rd Street |
| San Francisco, CA 94105 | Campbell, CA 95008 |
| Telephone:  (415) 402-0084 | Telephone:  (650) 948-7200 |
| Facsimile: (415) 520-0104 | Facsimile: (650) 948-7220 |
| *Attorneys for Plaintiff Dionne Choyce* | *Attorneys for Defendant Layer42.net, Inc.* |

/s/ Leila Knox